Argued and submitted May 29, affirmed November 9,
reconsideration denied December 17, 1981,
petition for review denied January 5, 1982 (292 Or 356)

In the Matter of the Compensation of
Merle Cooper, Claimant.

## COOPER,
*Petitioner,*

*v.*

## STATE ACCIDENT INSURANCE FUND
## CORPORATION, et al,
*Respondents.*

(WCB No. 79-8266, CA 19780)

635 P2d 1067

David W. Hittle, Salem, argued the cause for petitioner. With him on the brief was Olson, Hittle, Gardner & Evans, Salem.

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent State Accident Insurance Fund Corporation. With him on the brief were K. R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem.

Margaret H. Leek Leiberan, Portland, argued the cause for respondents Rosoboro Lumber and EBI. With her on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

YOUNG, J.

## YOUNG, J.

Claimant appeals the denial of his workers' compensation claim. He pressed his claim as either a compensable injury or an occupational disease. No party has chosen one or the other theory exclusively. The referee denied the claim. On review the Board affirmed the denial. The central question is compensability. If we determine the claim to be compensable, we must then determine the responsible carrier. We review *de novo,* ORS 656.298(6), and affirm.

The essential facts are not seriously disputed. Claimant is 57 years old. He worked for 20 years at Rosboro Lumber Company as a core layer in the plywood mill. Sometime in early May 1979, a piece of core or veneer "jumped" with some force from a machine where claimant was working, caught his gloved right hand and "snapped [his] wrist sideways." Claimant experienced some pain, complained to co-workers about it and finished his shift. Swelling developed in the wrist during the day and continued until surgery in October, 1979. Claimant did not seek medical help and continued working for several weeks. He wore an elastic bandage to control the swelling.

In late July, claimant injured his left elbow at work. That injury required him to see Dr. Bylund. Because the right wrist was painful and swollen, he asked the doctor to examine his wrist. Dr. Bylund diagnosed tendonitis and referred claimant to Dr. Carter, an orthopedic surgeon. He examined the wrist on September 6, 1979, and found a preexisting condition diagnosed as "an old scapholunated dissociation with secondary degenerative change of the radioscaphoid joint * * * related to what appears to be an old trauma." The diagnosis was a condition that preexisted the May, 1979, injury.

On September 24, 1979, Dr. Carter reported that claimant was unable to work because of wrist pain. "Based on the degree of post-traumatic arthritis that [claimant has] it would be perfectly expected that he would have a level of pain that would preclude his working." Employee Benefits Insurance Company (EBI) paid time loss from September 6, 1979 to November 16, 1979. Wrist surgery was performed in October.

Dr. Carter was firm in his opinion that the underlying wrist condition was unrelated to the employment. He reported in September, 1979 that

"* * * I have also pointed out to him [claimant] again today that he has a condition which is a post-traumatic arthritis as a result of an injury at some time in the past and that the fact that he has presented only recently with symptoms of pain is or would be a natural progression of that particular type of disease."

On March 31, 1980, Dr. Carter responded in writing to questions asked by claimant's attorney. The pertinent questions and answers are:

"1. * * * [W]as Mr. Cooper's injury in May, 1979, * * * the 'old scapholunate dissociation' that you referred to in your letter of report of September 6, 1979?"

"* * * [W]hen I examined him and reviewed x-rays of his wrist in September 1979, the x-ray appearance of the wrist indicated that the process had been present most likely for many years and was not an injury that occurred as recently as May 1979. Therefore, the injury in May of 1979, was not the 'old scapholunate dissociation' that I referred to in my letter report of September 6, 1979. The x-ray appearance was, in fact, such that one would have expected the disease process to have been present for many years."

"2. * * * [W]as Mr. Cooper's injury in May, 1979, * * * a material contributing cause of the condition for which you performed the wrist surgery * * *?"

"The injury of May 1979, was in my opinion an incident that brought to light an underlying disease process that would have become symptomatic as a matter of time with or without that injury of May 1979."

"3. * * * [W]as Mr. Cooper's work activities * * * a material contributing cause of the condition for which you performed wrist surgery * * *?"

"In my opinion Mr. Cooper's work activities were not a material contributing cause of the condition for which I performed wrist surgery in October 1979."

"4. * * * [D]id Mr. Cooper's work activities materially aggravate Mr. Cooper's underlying condition for which you performed the wrist surgery in October, 1979?"

"* * * [I]t is my opinion that Mr. Cooper's work did materially aggravate Mr. Cooper's condition in that it allowed his condition to remain symptomatic in the form of pain."

■     Claimant did not seek medical attention for two to three months following the May incident. Claimant did not establish by a preponderance of the evidence that it was the injury and not the underlying condition that required medical care. It was not the May incident itself that required medical attention but rather the pain associated with the underlying condition. In Dr. Carter's opinion the work activities "were not a material contributing cause of the condition for which he performed wrist surgery in October 1979." Consequently, claimant has not established a compensable injury.

■     The issue of whether claimant has proven an occupational disease claim is more difficult. ORS 656.802(1)(a) defines occupational disease:

> "Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

In *Beaudry v. Winchester Plywood Co.,* 255 Or 503, 469 P2d 25 (1970), the court held that a disability resulting from a worsening of the preexising condition by reason of claimant's work activities and conditions was compensable and within the definition. The seminal case for our analysis is *Weller v. Union Carbide,* 288 Or 27, 603 P2d 259 (1979), an occupational disease claim. There the court held that in order to prevail a claimant must show by a preponderance of the evidence that: (1) his work activity and conditions (2) caused a worsening of his underlying disease (3) resulting in an increase in his pain (4) to the extent that it produces disability or requires medical services.

There is no evidence in this record of a work-incurred or work-induced physiological or pathological change in the underlying condition. On the contrary, the evidence is that the May injury and the subsequent work activities aggravated the condition, resulting in a change of symptoms only, i.e., pain, and not a change in the underlying condition. Under the *Weller* test, without a worsening of the underlying condition the claim is not compensable.

There is nothing in the record to explain how pain can occur without a contemporaneous worsening of the underlying disease. In this case, the pain was of sufficient

intensity to be disabling, and claimant was unable to work because of the pain and submitted to an operation. However, under *Weller* we are not entitled to presume that pain and a worsening of the underlying condition are connected.

Affirmed.