In the Matter of the Compensation of
Johnny Smith, Claimant.

SMITH,
*Petitioner,*
*v.*
BROOKS-SCANLON, INC.,
*Employer,*
*and*
EMPLOYEE BENEFITS INSURANCE CO.,
*Respondent - Cross-Petitioner,*
*and*
UNITED PACIFIC/RELIANCE,
*Respondent - Cross-Respondent.*

(WCB Case No. 77-1889; 78-1678, CA A20145)

636 P2d 433

Alice Goldstein, Portland, argued the cause for petitioner. With her on the brief was Welch, Bruun & Green, Portland.

Margaret H. Leek Leiberan, Portland, argued the cause for respondent - cross-petitioner, Employee Benefits Insurance Co. With her on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Dennis VavRosky, Portland, argued the cause for respondent - cross-respondent United Pacific/Reliance. With him on the brief were Ronald W. Atwood and Rankin, McMurry, VavRosky & Doherty, Portland.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warden, Judge.

WARDEN, J.

## WARDEN, J.

Claimant appeals from an order of the Workers' Compensation Board which reversed the referee's award of permanent total disability and made an award of 80 percent unscheduled disability for a right shoulder injury (for which insurer Employee Benefits Insurance Co. (EBI) was held responsible) and reversed the referee's award of additional compensation for a left shoulder injury.[1] EBI cross-appeals, contending that respondent United Pacific/Reliance Insurance Company (United Pacific) is the carrier responsible for the right shoulder condition.

■ At the time of the hearing, claimant, age 52, was a laborer with a seventh-grade education. He had worked as a logger, heavy equipment operator, forge hammer operator and rubber tire skinner operator. In March, 1975, while employed at Brooks-Scanlon, Inc., claimant sustained an on-the-job injury to his right shoulder, a tear of the rotator cuff; United Pacific was the responsible insurance carrier. He returned to work in May, 1975, and was awarded 5 percent unscheduled disability in September, 1975. On August 6, 1976, he sustained an on-the-job contusion to the left shoulder. He returned to work in November, 1976. On November 28, after a few days back on the job, he suffered a "massive anterior cuff tear with involvement directly over the biceps tendon" in the right shoulder. EBI was the insurer for Brooks-Scanlon in 1976. On December 16, 1976, the right rotator cuff was surgically repaired.

Claimant has not been released for work by his treating doctor since the surgery on the right shoulder. No party contends that his medical condition was not stationary at the time of the hearing. One physician summarized claimant's description of his condition in January, 1979:

"His chief complaint is pain in both shoulders. This is described as a severe aching sensation, at times pulsating. It is no better at rest. It is aggravated by motion, particularly elevation and any lifting with the arm. Occasionally he has awakened at night because of pain. Intermittently, he has numbness of the right hand. The right shoulder seems to be more symptomatic than the left with discomfort and weakness."

---

[1] Due to our disposition of this case, we find it unnecessary to address the question of additional compensation for the left shoulder injury.

This doctor, who saw claimant once, thought he could return to sedentary employment, which was also the view of another physician who had examined claimant on one occasion. His treating physician, however, stated in his report in December, 1977, that claimant was permanently and totally disabled:

"I have recommended total disability and the patient is willing to accept this status. This is the worst case of symptomatic tenosynovitis and probable rupture of the rotator cuff that I have seen. *I think there is an underlying psychopathology to some extent with very poor motivation to return to work, however, with the combination of the symptoms of these two shoulders at the present time I would certainly classify this man as totally disabled.*" (Emphasis added.)

Claimant testified that he is able to engage in some recreational and household activities, but with difficulty because of the limited mobility of his arms, aching pain in his shoulders and swelling of his hands. Although the fact that claimant has not been released for work would tend to indicate that claimant is, as a medical matter, permanently and totally disabled, his treating doctor has created an ambiguity in linking the physical problems with claimant's motivation. In addition, two other physicians felt that claimant could physically do some form of work. We conclude, nonetheless, that claimant is permanently and totally disabled in that he is foreclosed from the labor market by a combination of his physical limitations, education, aptitude, age and adaptability to do other than heavy physical labor. *Wilson v. Weyerhaeuser Company,* 30 Or App 403, 409, 567 P2d 567 (1977). In addition to the problems with both shoulders, claimant has a 45 percent hearing loss.[2] A vocational consultant reported that the hearing loss could preclude claimant from unskilled jobs such as that of a security guard, where hearing ability is important. The consultant also reported that claimant has no skills or aptitudes for sedentary employment and that most light, unskilled jobs require repetitive movement of the dominant upper extremity (the right arm in claimant's case), which claimant is unable to sustain.

---

[2] Claimant does not assign error to the determination by the referee affirming the denial of the claim that the hearing loss was caused by claimant's employment with Brooks-Scanlon; the Board did not address the matter of the hearing loss.

Both EBI and United Pacific argue that claimant is not permanently and totally disabled, because he has not made any "effort to obtain regular gainful employment." ORS 656.206(3).[3] Claimant's failure to seek employment is excused by the fact that he was never released for work by his treating doctor. In *Butcher v. SAIF,* 45 Or App 313, 317, 608 P2d 575 (1980), we found that claimant had shown that he was completely incapacitated and continued: "Claimant was told by all the doctors involved in his examination and treatment that he could not work. Claimant relied on those statements and did not seek employment." In *Morris v. Denny's,* 50 Or App 533, 538, 623 P2d 1118 (1981), we said:

"In view of claimant's guarded prognosis for return to work and the psychiatrist's conclusion that she was not a candidate for vocational rehabilitation, her failure to seek employment or vocational rehabilitation does not militate against her claim, where it would be futile for claimant to attempt to be employed."

We are satisfied that it would have been futile for claimant here to have sought employment when he had not been released for work by his treating doctor. We therefore reverse as to the extent of claimant's disability and find, as did the referee, that claimant is permanently and totally disabled.

■      The question raised by the cross-appeal is which of the two insurance carriers is responsible for claimant's current disability. The preponderance of the medical evidence shows that a contributing factor in the aggravation of claimant's right shoulder injury was the additional stress placed upon that shoulder by the weakness of the left shoulder occasioned by the August, 1976, injury covered by EBI. In finding that an aggravation rather than a new injury occurred in November, 1976, claimant's treating physician did not rule out a relationship between the left and right shoulder conditions. One of the other physicians explained the mechanism:

"In August of 1976, [claimant] sustained an injury to the left shoulder. His right shoulder was not injured [in

---

[3] ORS 656.206(3) provides:

"The worker has the burden of proving permanent total disability status and must establish that he is willing to seek regular gainful employment and that he has made reasonable efforts to obtain such employment."

that incident]. When he returned to work in November of 1976, however, he was forced by his history to depend almost entirely on the previously-injured right upper extremity to perform rather demanding tasks of a heavy equipment operator. This aggravated the pre-existing condition on the right side. It would appear that the August, 1976 injury of the left shoulder did significantly aggravate the pre-existing right shoulder problem. This aggravation really is an indirect problem related to the demands of his employment and inability to use the left upper extremity to protect the previously-injured right upper extremity. It is probable that no surgery would have been necessary in December of 1976, had his left shoulder not been injured; however, it would be only speculative to state that he would never have needed surgical correction of his rotator cuff tear on the right side."

We conclude that the incident of November 28, 1976, resulted in further damage to the rotator cuff to the point that surgery was required and was the result of his almost exclusive use of his right arm due to the left shoulder injury. The left shoulder injury, being the direct cause of the right shoulder damage, makes responsibility for both shoulders that of EBI. *See Wood v. SAIF,* 30 Or App 1103, 1108, 569 P2d 648 (1977), *rev den* 282 Or 189 (1978). The order of the Board is reversed insofar as it found claimant to be less than permanently and totally disabled; it is affirmed insofar as it found EBI to be the carrier responsible for payment of claimant's benefits.

Reversed in part; affirmed in part; and remanded with instructions to reinstate the referee's order finding claimant to be permanently and totally disabled.