Argued and submitted August 21, 1981, reversed and
remanded with instructions January 6, 1982

In the Matter of the Compensation of
A. L. Florence, Claimant.

FLORENCE,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION et al,
*Respondents.*

(SAIF Claim No. ED 297834, CA A20340)

638 P2d 1161

Douglas L. Minson, Hillsboro, argued the cause and filed the brief for petitioner.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent State Accident Insurance Fund Corporation. With him on the brief were K. R. Maloney, General Counsel, and

James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem.

Paul Mackey, Deputy County Counsel, Portland, argued the cause and filed the brief for respondent Multnomah County.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

Roberts, J., dissenting.

## GILLETTE, P. J.

The issue in this workers' compensation case is whether claimant's right knee condition is compensable and, if it is, which of two carriers is responsible.

Claimant is a 60-year old heavy equipment operator. An operation to remove cartilage from the inside of his right knee was performed in 1947; a second operation for the same purpose was performed on the left knee in 1967. In May, 1978, while climbing down from the road grader he normally operated for his employer, claimant slipped and injured his left knee. SAIF accepted responsibility for the injury and paid time loss benefits. Claimant testified that his *right* knee began to cause him pain within a day or two after the injury to the left knee, although his treating physician did not document any symptoms in the right knee until August, 1978. On July 1, 1978, Multnomah County became a direct responsibility employer. On January 17, 1979, SAIF denied responsibility for the right knee condition; the county denied responsibility on January 23, 1979.

The referee, relying on testimony by claimant's treating physician, an orthopedic surgeon, found "a direct causal connection" between the injury to the left knee and claimant's right knee problems. The treating physician, Dr. Eilers, had stated that two work-related factors caused the onset of symptoms in claimant's right knee. First, he said, the pain from the injury to the left knee caused claimant to shift more weight to the right knee, which was already weakened by degenerative arthritis; second, claimant's ordinary position in the operation of the road grader, leaning on the right leg to look out and observe the blade, placed stress on the right knee. Dr. Pasquesi, a consulting physician, agreed. He described claimant as a man with a pre-existing degenerative arthritic condition in the right knee, which was "undoubtedly aggravated" by the May, 1978, injury.

The Workers' Compensation Board, citing *Weller v. Union Carbide Corporation,* 288 Or 27, 602 P2d 259 (1979), reversed the referee, finding that claimant had not shown that his "underlying condition was worsened by his work activity."

In view of the evidence we have cited, the Board's resort to *Weller* is obscure. The *Weller* test is the standard of proof relating to a claim for an *occupational disease*. In the case before us, however, claimant has not filed an occupational disease claim. SAIF and the employer were advised of claimant's problem with his right knee through the medical reports they received from claimant's treating physician relating to the May, 1978, *injury* to claimant's left knee and an injury to his left elbow suffered in another fall from his grader in September, 1978; no new claim was filed. Claimant's attorney, at the hearing before the referee, said the treating doctor had never told claimant he had an occupational disease, and claimant testified he had never heard the words "occupational disease" before the day of the hearing. Following the hearing before the referee, claimant's attorney wrote to the referee, stating that claimant was, by that letter, making an occupational disease claim. Both carriers were allowed to respond. Before us, claimant maintains that he should prevail either on his claim that the right knee condition is "a part of the accepted industrial injury to the left knee" or on a claim for an occupational disease.

■ As we view this case, the Board's application of an occupational disease/*Weller* analysis was misplaced. It was the *injury* to his other knee which materially contributed to the symptomatology which is before us now; the testimony of claimant's treating physician clearly establishes that fact. Claimant is entitled to receive medical services for the right knee. *See Smith v. Brooks-Scanlon,* 54 Or App 730, 636 P2d 433 (1981); *Wood v. SAIF,* 30 Or App 1103, 1108, 569 P2d 648 (1977), *rev den* 282 Or 189 (1978).

■ In view of our conclusion that the right knee condition is to be treated as arising out of the compensable injury to the left knee, SAIF is the responsible carrier. *See Eber v. Royal Globe,* 54 Or App 940, 636 P2d 1007 (1981).

The order of the Board is reversed and remanded with instructions to reinstate the referee's opinion.

**ROBERTS, J.,** dissenting.

I dissent from the majority opinion because I do not agree that "the Board's resort to *Weller* is obscure." 55 Or App at 470.

*Weller v. Union Carbide Corporation,* 288 Or 27, 29, 602 P2d 259 (1979), posed the following question: "Does a worker have a compensable claim where: (1) he has an underlying disease which is symptomatic; (2) his work results in a worsening of his symptoms not produced by a concomitant worsening of the underlying disease process; and (3) the worsening requires either medical services or results in disability or both?" The court then answered the question in the negative.[1]

The Supreme Court allowed review of *Weller* "along with [three other cases] * * * to consider problems seemingly common to these cases of the effect of work activity and conditions on an underlying pathological condition in the worker's body." 288 Or at 29. My interpretation of *Weller* is that where that "work activity and conditions" includes a job-related injury, and that injury affects an underlying pathological condition of the worker, the *Weller* test appropriately can be applied. One element of the test is proof by a preponderance of evidence that a worsening of the underlying disease has occurred. 288 Or at 35. Claimant here failed to prove that the underlying disease in his right knee has worsened as a result of the injury to his left knee.

The degenerative arthritis in claimant's right knee was not caused by the injury to his left knee. What has occurred is an onset of symptoms. Claimant's brief admits that

"As to whether the disease process was anatomically or physiologically worsened or merely made symptomatic by virtue of the traumatic injury, the best the treating doctor could do without surgery to examine the physiology of the knee was to say that the injury to the left knee was like throwing a match into a gas can."

Claimant states "the disability in the *right* knee was caused by the pathological change to the *left* knee." If *Weller* applies, this is not the proper analysis. The question is whether there has been a worsening of the underlying disease in the *right* knee caused by circumstances to which claimant is not ordinarily exposed other than at work.

---

[1] Even though the claim here is one for medical services, not compensation, for the uninjured knee, that distinction does not make any difference.

*Beaudry v. Winchester Plywood Co.,* 255 Or 503, 469 P2d 25 (1970). Claimant's treating physician testified:

"* * * It's not a great accelerating of degenerative arthritis that occurs. What it is, is making an increase there that was minimally symptomatic. Not enough to come into the hospital or see a doctor, to making that symptomatic where he does rely and wants to rely on medication * * * . You're not going to see any change in his knee joints for a number of years, a lot more changes. It's a gradual thing, so it's not a great change, but it's a — it's the taking of that asymptomatic and making it symptomatic enough for me to have to do something about it.

"Q. I don't want to belabor the point. My impression, if this man - I don't know what his true history is - if he had been working for five years on this grader until September when he quits, then that five-year period produced some acceleration gradually of his knee conditions, both knees?

"A. That's true.

"Q. And we're talking the about [sic] right knee. We also have another factor of him compensating for his left knee after a slip and fall, putting a little more pressure on the right?

"A. (nodding head).

"Q. And it's the two of these conditions together, plus any other variables which are unknown, which produces his disability?

"A. At the present time, yes.

"* * * * *

"Q. Would it be your opinion that sometime in the future he would need resurfacing of both knees?

"A. If he had not had anything?

"Q. No injuries. If he worked, but just as a result of the natural progression of this degenerative process.

"A. There's no question about it. This man's going to end up having it, regardless of what he's done, job or no job, if he would have stopped ten years ago. * * *

"* * * * *

"A. I think he was—I think this whole thing just happened to get him at a time that he was getting close to this whole thing anyway. * * * .

"* * * * * ."

As to causation, the physician was quite clear that both the work and the injury were only a part of the problem:

"* * * * *

"A.  I think any activities he's going to do — he has chronic, long-standing degenerative knee joint disease. Any activity he's going to do is going to bother him. It's going to aggravate him. That condition is stirred up, and I can't — I'm unable to separate, you know, how much of that is home, what percentage of it is work. It's all kind of the total thing.

"* * * * *."

The other two medical opinions were that claimant's injury precipitated *symptoms* in the right knee or aggravated the pre-existing condition of that knee. Without more, the appearance of an increase in symptoms of an underlying disease is not in itself compensable. *See Cooper v. SAIF,* 54 Or App 659, 635 P2d 1067; *Autwell v. Tri-Met,* 48 Or App 99, 615 P2d 1201, *rev den* 290 Or 211 (1980). Likewise, pain resulting in disability or requiring medical services, whether temporary or permanent, is compensable only if an underlying pathological change in the disease has been established. *See Stupfel v. Edward Hines Lumber Co.,* 288 Or 39, 43, 602 P2d 264 (1979).

I would affirm the decision of the board.