Argued and submitted October 1, reversed and remanded to Workers' Compensation
Board November 26, reconsideration allowed November 26, 1985
See 300 Or 553, 715 P2d 90 (1986)

In the Matter of the Compensation of
David F. Barrett, Claimant.

BARRETT,
*Petitioner on review,*

*v.*

D & H DRYWALL et al,
*Respondents on review.*

(WCB 81-02757; CA A29349; SC S31782)

709 P2d 1083

James L. Edmunson, of Malagon & Associates, Eugene,
argued the cause for petitioner on review. On the petition was
Merrill Schneider, Sandy.

Scott H. Terrall, of Meyers & Terrall, Portland, argued the cause for respondent on review.

Robert K. Udziela, of Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, filed a brief on behalf of *amicus curiae* Oregon Workers' Compensation Attorneys Association.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

JONES, J.

**JONES, J.**

Claimant contends that his preexisting asymptomatic osteoarthritis became symptomatic because of his compensable injury and, therefore, the symptoms, insofar as they produce loss of bodily function and consequent loss of earning capacity, are compensable as being "due to" his compensable injury under ORS 656.214(5). Claimant petitioned for judicial review of the order of the Workers' Compensation Board, claiming that the Board erred in failing to consider his preexisting osteoarthritis in determining the extent of his permanent disability. The Court of Appeals first reversed the Board and then, on reconsideration, affirmed the Board. 70 Or App 123, 688 P2d 130 (1984), 73 Or App 184, 698 P2d 498 (1985).

The Court of Appeals found that claimant, a 42-year-old man, had worked for 19 years as a sheetrock taper and that:

> "* * * In 1960, while [claimant] was in the service, he injured his low back in a jeep accident and has had occasional difficulties with his back since then. However, he was asymptomatic for some time before the accident in this case.

> "On June 5, 1980, he fell four feet from a ladder onto a concrete floor, landing on his feet and hitting his back on a brick wall. He suffered pain and sought immediate medical attention. The claim was accepted, and benefits were paid for a substantial period of time. A determination order was issued on March 4, 1981, which awarded temporary total disability and 25 percent unscheduled permanent disability. Claimant requested a hearing. On September 14, 1981, he filed an amended request for hearing alleging that his underlying arthritic condition arose out of and in the scope of his employment. On February 23, 1982, the employer denied liability for the underlying arthritic condition but continued to accept responsibility for the June 5 accident. The referee upheld the denial and, after eliminating any disability caused by the arthritis, awarded claimant an additional 10 percent unscheduled disability. The Board affirmed." 70 Or App at 125.

The Court of Appeals then found that

> "It is undisputed that claimant has an underlying degenerative intervertebral disc disease. Further, we agree with the

referee's conclusion that claimant failed to establish a worsening of his underlying disease attributable to the accident. * * *" 70 Or App at 125-26.

and concluded its first opinion, holding

"* * * that a claimant is entitled to full compensation if a preexisting condition contributes to the permanent loss of earning capacity in combination with a compensable injury, ORS 656.215(5), even if the loss of earning capacity would have been minimal but for the preexisting injury." 70 Or App at 126.

The Court of Appeals then remanded the claim to the referee to determine the claimant's total loss of earning capacity, which would include consideration of any preexisting condition contributing to the worker's present disability and claim for loss of earning capacity.

On reconsideration, the Court of Appeals held:

"* * * In determining loss of earning capacity attributable to an industrial injury, impairments not related to the injury are not considered. This is in contrast with a determination of permanent total disability, which requires the consideration of preexisting disability. ORS 656.206(1)(a)." 73 Or App at 186 (footnote omitted).

■ The Court of Appeals was in error in making this statement. The oft-expressed maxim still applies: An employer takes the worker as he finds him.[1] Whether the worker suffers greater permanent partial disability (measured by loss of earning capacity) because of a preexisting condition is irrelevant in deciding the amount of loss of earning capacity caused by a new injury superimposed on a preexisting condition.

The employer relies on the rationale of *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979), in its assertion that the underlying condition must be proven to be worsened in order for the referee to consider it. *Weller* was an occupational disease case and does not apply to an industrial injury

---

[1] *Surratt v. Gunderson Bros.,* 259 Or 65, 74, 485 P2d 410 (1971); *Keefer v. State Ind. Acc. Commission,* 171 Or 405, 412, 135 P2d 806 (1943).

claim.[2] Under the *Weller* holding, an employer must compensate a diseased worker if the worker proves by a preponderance of the evidence that "(1) his work activity and conditions (2) caused a worsening of his underlying disease (3) resulting in an increase in pain (4) to the extent that it produces disability or requires medical services." 288 Or at 35. In *Weller* we said that an occupational disease award requires proof that the underlying disease has worsened in order for a worker to establish compensability of a claim.

*Weller* involved a claimed gradual worsening of pain over a period of years—an occupational *disease* case as defined in ORS 656.802(1)(a). That standard is not the same standard as for occupational *injury,* defined by ORS 656.005(8)(a).

ORS 656.802(1)(a) defines an occupational disease as:

"Any disease or infection which arises out of and in the scope of the employment, *and* to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein." (Emphasis added.)

ORS 656.005(8)(a) defines an occupational injury as:

"* * * [A]n accidental injury * * * arising out of and in the course of employment, requiring medical services or resulting in death; an injury is accidental if the result is an accident, whether or not due to accidental means."

The award to be made here is not for increased compensation due to worsening of the worker's underlying

---

[2] We note that the Court of Appeals decision in *Cochell v. SAIF,* 59 Or App 391, 650 P2d 1088 (1982), an industrial injury case, incorrectly applied the occupational disease test of *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979). *Compare Florence v. SAIF,* 55 Or App 467, 638 P2d 1161 (1982) (correctly holding that *Weller* did not apply to injury cases); *see also Harris v. Albertson's, Inc.,* 65 Or App 254, 670 P2d 1059 (1983); *Jameson v. SAIF,* 63 Or App 553, 665 P2d 379 (1983). *Weller* does state that "[f]or the purposes of this case an occupational disease is to be considered an injury under the Workers' Compensation Law (ORS 656.001 to 656.794). ORS 656.804." 288 Or at 31. An occupational disease is considered as an injury for procedural reasons. *See, e.g., Beaudry v. Winchester Plywood Co.,* 255 Or 503, 512, 469 P2d 25 (1970). We did not say that an industrial injury is compensated as an occupational disease.

disease of osteoarthritis,[3] but for disability resulting from injuries when the worker fell off a ladder, landing on his feet and hitting his back on a brick wall. The injuries were superimposed upon his preexisting condition.

ORS 656.214(5), relating to permanent partial disability, reads:

> "In all cases of injury resulting in permanent partial disability, other than those described in subsections (2) to (4) of this section, the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. Earning capacity is the ability to obtain and hold gainful employment in the broad field of general occupations, taking into consideration such factors as age, education, training, skills and work experience. The number of degrees of disability shall be a maximum of 320 degrees determined by the extent of the disability compared to the worker before such injury and without such disability. For the purpose of this subsection, the value of each degree of disability is $100."

No words in that statute prohibit the referee or the Board from considering a worker's preexisting condition. The definition of permanent total disability in ORS 656.206(1)(a)[4] that specifically includes consideration of preexisting disabilities does not justify the Court of Appeals' conclusion that permanent partial disability determinations may not include consideration of preexisting conditions or diseases. The legislature's failure to add those specific words of inclusion does not justify a negative implication that it intended to exclude consideration of a preexisting condition when the worker sustains an industrial injury resulting in permanent partial disability.[5]

---

[3] The Court of Appeals found that the injury had not worsened claimant's underlying osteoarthritis, and we are bound by the factual findings of the Court of Appeals. *Wheeler v. Boise Cascade,* 298 Or 452, 457, 693 P2d 632 (1984); *Weller v. Union Carbide, supra,* 288 Or at 29; *Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 491 P2d 997 (1971).

[4] ORS 656.206(1)(a) defines "permanent total disability" to mean

> "* * * the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation."

[5] In 1979, the Workers' Compensation Department's amendments to ORS

The Court of Appeals is reversed and this claim is remanded to the Board to determine the extent of disability to the worker, measured by loss of earning capacity, caused by the industrial accident of June 5, 1980, taking into consideration the worker's loss of earning capacity, if any, resulting from symptoms caused by the injury.

656.214(5) included the phrase "the criteria for rating of disability shall be the permanent loss of earning capacity due to the industrial injury," which was adopted in substantially the same form. Or Laws 1979, ch 839, § 27. In presenting the amendment to the legislature, the department wrote:

"* * * Since 1971, the Supreme Court of the State of Oregon has stated that the sole criteria [sic] for rating unscheduled disability shall be the permanent loss of earning capacity due to the industrial injury. We believe that these criteria should be codified by amending ORS 656.214."

There is no legislative history that indicates anyone intended to eliminate consideration of a worker's preexisting condition in determining the extent of permanent partial disability.