Argued and submitted December 16, 1985, affirmed May 14, 1986

In the Matter of the Compensation of
T. L. Allie, Claimant.

ALLIE,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION et al,
*Respondents.*

(WCB 83-07475; CA A35500)

719 P2d 47

George W. Sohl, Medford, argued the cause and filed the brief for petitioner.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondents. On the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Donna Parton Garaventa, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Warden, Judge.

WARDEN, J.

## WARDEN, J.

In this workers' compensation case the issue is the extent to which claimant's disability is related to his compensable injury. A determination order, which was affirmed by a referee and by the Workers' Compensation Board, awarded compensation for 40 percent unscheduled permanent partial disability. Claimant asserts that he is permanently and totally disabled as a result of his injury. We affirm.

Claimant is a dump truck driver. On August 24, 1981, he sustained a compensable injury to his neck and lower back. He initially sought chiropractic treatment with Dr. Bamforth, who diagnosed the condition as a cervical sprain. On September 11, 1981, he was examined by Dr. Weinman for low back pain. Weinman's report indicates that, although claimant had complained of neck pain after the injury, it had largely disappeared by the time of the September 11 examination.

Claimant was examined on December 14, 1981, by Dr. Peterson, an orthopedic surgeon, for both low back and neck pains. Peterson also diagnosed the condition as a cervical sprain. At that time the major complaint involved lumbar pain with some decreased cervical range. Peterson then referred claimant to Dr. Campagna, a neurological surgeon, who examined him on March 8, 1982. Campagna diagnosed degenerative cervical disc disease and concluded that claimant was suffering from a post-traumatic aggravation of cervical spondylosis and a lumbar sprain, secondary to the August, 1981, industrial accident. He performed a cervical laminectomy to reduce nerve root compression on March 24, 1982. His surgical notes indicate that he found a "considerable amount of cervical spondylosis," a degenerative arthritic condition. Claimant continued to suffer neck, left shoulder and left hand pain after the laminectomy.

Examinations by Dr. Johnson and, at SAIF's request, three physicians from Orthopedic Consultants confirmed the presence of cervical spondylosis. Both Johnson and Orthopaedic Consultants indicated that further treatment could not improve the condition. The May 5, 1983, Orthopaedic Consultants report stated that claimant's condition should be considered stationary. Campagna reported on

September 22, 1983, that claimant's neck condition was stationary and that no further treatment was indicated. Campagna concluded that claimant suffered moderate impairment of his neck as a result of the August, 1981, accident. A determination order declared claimant stationary as of June 14, 1983.

The preponderance of the medical evidence indicates that claimant is permanently and totally disabled. The issue is whether his current cervical condition, which is a major element of his disability, is related to the compensable 1981 industrial accident.[1] He has the burden of proving by a preponderance of the evidence that his current disabling symptoms were brought on by the compensable injury. *Barrett v. D & H Drywall,* 300 Or 325, 709 P2d 1083 (1985). This case involves expert analysis, rather than expert external observation. Therefore, we do not give special credit to the evidence from treating physicians as opposed to other doctors. *Hammons v. Perini,* 43 Or App 299, 602 P2d 1094 (1979).

Claimant relies in part on the diagnostic reports of Campagna. They amount to conclusory statements that claimant had suffered moderate neck impairment from the accident and that he suffered "post-traumatic aggravation of cervical spondylosis," but they offer no explanation of the pathology of the alleged traumatic aggravation of the spondylosis. Dr. Buonocore testified that he was claimant's family doctor and had been treating him over the years for a variety of ailments unrelated to the injury. He assisted Campagna in performing the laminectomy. He testified that cervical spondylosis occurs naturally as a degenerative disease. He agreed that claimant's spondylosis probably pre-existed his industrial injury but that the injury caused the condition to become symptomatic. Buonocore believed that claimant's current disability is related to the injury, apparently because he believes that the extensiveness of claimant's spondylosis is not consistent with the natural progression of the disease and, therefore, must be related to the industrial injury.

---

[1] SAIF's expert witness, Tennyson, a neurological consultant, believes that Campagna's cervical laminectomy surgery was unrelated to claimant's industrial injury. The referee found that SAIF had already accepted the claim for the surgery and that, pursuant to *Bauman v. SAIF,* 295 Or 788, 670 P2d 1027 (1983), it could not later deny responsibility. Therefore, the only issue remaining is whether claimant's post-surgical condition is related to the industrial injury.

■ Claimant also submitted Peterson's deposition. Peterson inferred a relationship between claimant's current symptoms and his injury from the chronology of events. Claimant had never suffered any lumbar or cervical pain before his injury but suffered from both after the accident.[2] As we noted in *Bradshaw v. SAIF*, 69 Or App 587, 589, 682 P2d 165 (1984), "we have always been hesitant to infer causation from chronological sequence." In *Bradshaw*, the claimant prevailed because of the very close connection between the injury and the condition and "because of the careful elimination of all alternative causes." 69 Or App at 590. In *Edwards v. SAIF*, 30 Or App 21, 566 P2d 189, *rev den* 279 Or 301 (1977), involving a complex medical problem, we refused to rely on a "natural inference" based on the timing and location of the condition, when the medical evidence did not support such an inference. *See Volk v. Birdseye Division*, 16 Or App 349, 518 P2d 672, *rev den* (1974). The referee did not find Peterson's opinion relating claimant's disability to his injury on a "historical, *post hoc* basis" convincing and neither do we. This case is closer to *Edwards* than to *Bradshaw*.

■■ SAIF called Tennyson, who offered a detailed analysis leading to his conclusion that claimant's current cervical disability is not related to his injury or to the subsequent surgery.[3] Tennyson believes that claimant's injury resulted in a cervical sprain, the diagnosis initially made by Bamforth, Weinman and Peterson. He noted that complaints of cervical pain had largely dissipated by September, 1981, as reported by Weinman, and that the recorded symptoms immediately after the injury were compatible with a cervical sprain but not with nerve root compression. Tennyson's opinion is that claimant's current symptoms are due to the natural progression of the degenerative process and that he would have the same symptoms today, even if the August, 1981, injury had not occurred. The referee found Tennyson's testimony persuasive, as do we.

---

[2] Peterson stated:

"[I]t would be my opinion that his symptoms are based upon a combination of cervical degenerative disc [*sic*] that are unrelated to his injury, and whatever influence the injury brought on it in making his previous existing problems symptomatic, and whatever influence came from the injury itself, and the other effects of what may have been a product of surgery in possible scar development."

[3] There was evidence that post-surgical scarring might produce nerve root irritation.

Claimant has failed to link his industrial injury with his symptoms of a progressive, degenerative disc disease.[4]

Affirmed.

---

[4] Claimant alternatively asks us to remand the case so that he can offer Campagna's testimony in response to Tennyson. The Board did not abuse its discretion in refusing to remand for further testimony, and we also decline, finding that this case was not improperly, incompletely or otherwise insufficiently developed. *Bailey v. SAIF*, 296 Or 41, 672 P2d 333 (1983).