Argued and submitted December 1, 1986, affirmed April 22, 1987

In the Matter of the Compensation of
Elizabeth M. White, Claimant.

## WAREMART, INC.,
*Petitioner,*

*v.*

## WHITE,
*Respondent.*

(WCB 84-03175; CA A38694)

735 P2d 1262

Kenneth L. Kleinsmith, Portland, argued the cause for petitioner. On the brief was Daniel L. Meyers, Portland.

Nelson R. Hall, Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, and Diana Craine, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Employer seeks judicial review of a Workers' Compensation Board order awarding claimant permanent total disability.[1] The dispositive issue is whether medical conditions preexisting claimant's compensable injuries may be considered in determining the extent of her disability. The Board concluded that they may be considered. On *de novo* review, we affirm.

In March, 1983, claimant slipped on a wet floor at work and injured her back. In April, she again fell at work, reinjuring her back. She was seen by Dr. Bristol, who initially diagnosed a bruised sciatic nerve. He noted arthritic disc degeneration in her spinal column and decreased sensation to pinpricks in her right leg and foot. She returned ten days later, complaining of continued low back pain. He changed his initial diagnosis to lumbar sprain. He also noted that the numbness in her right leg and foot were more extensive and that her right arm responded variably to pinpricks. She could not return to work at that time. Employer accepted her claim and began paying time loss and medical benefits.

Claimant continued to suffer low back pain. In August, 1983, a back spasm caused her to fall, resulting in a fracture of her left ankle.[2] Her neurological symptoms persisted, and Bristol referred her to several specialists. By early 1984, the specialists had diagnosed primary amyloidosis and secondary peripheral neuropathy.

In March, 1984, employer sought closure on the ground that claimant's work-related disability had become medically stationary and that it was not the cause of her medical impairment. It also denied benefits for the amyloidosis and peripheral neuropathy. The determination order upheld the denial; it awarded claimant 45 percent unscheduled disability resulting from her back condition and

---

[1] ORS 656.206(1)(a) provides, in relevant part:

" 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation."

[2] The record is unclear whether the fracture occurred in April or August. However, it has been treated as a work injury by all parties.

10 percent disability for the loss of function of her ankle. Claimant requested a hearing.

The referee found that claimant and Bristol were credible witnesses. He concluded that "the conditions diagnosed as amyloidosis, peripheral neuropathy secondary to amyloidosis, and diabetes were not preexisting conditions, nor were they preexisting disabling conditions.* * * I am of the opinion claimant is not permanently and totally disabled." He awarded claimant 60 percent unscheduled permanent partial disability for her back condition and 10 percent disability for her ankle. Claimant requested review. The Board found that, although the amyloidosis and peripheral neuropathy were unrelated to claimant's work injury and, therefore, were noncompensable, their combination with her compensable injury justifies an award of permanent total disability:

> "Claimant had preexisting degenerative disc disease and a prior industrial injury to her right ankle. The unrelated polyneuropathy condition was discovered coincidentally at the time of claimant's industrial injury in April 1983. Treatment of the neuropathy induced the subsequent diabetic condition. The diabetes and the polyneuropathy interfered with the healing of claimant's left ankle. Claimant's treating doctor reported that claimant was totally disabled by the effects of her low back injury alone, but that she would also be totally disabled by the polyneuropathy. Subsequent testing established that the neuropathy condition was a sign of severe primary amyloidosis. Although primary amyloidosis was previously unsuspected and undetected, we are persuaded by the treating doctor's ultimate opinion that the condition preexisted claimant's industrial injury.

> "* * * * *

> "We find that the synergistic combination of claimant's preexisting primary amyloidosis with industrial injuries to claimant's low back and left ankle results in permanent total disability."

Employer contends that the weight of the medical evidence establishes that claimant's amyloidosis and neuropathy arose only coincidentally at the time of her injury. It argues that those conditions should not be considered in determining the extent of her disability, because they were not caused by her work injury, and that, even if the conditions preexisted her work injury, they were asymptomatic and not

disabling before the injury. Therefore, they should not be considered as preexisting disabilities in determining benefits.[3]

The medical evidence establishes that claimant's amyloidosis and neuropathy are unrelated to her work injury. The work injury did not cause, or worsen, those conditions. Bristol testified that the conditions preexisted the injury. He based his opinion on the fact that claimant exhibited decreased sensation to pinpricks during her first treatment for her work injury. The decreased sensation was the clinical manifestation of the amyloidosis and neuropathy. Nothing in the record contradicts that opinion. However, Bristol also testified that those conditions have prevented claimant's strained back from healing and that her back injuries continue to cause muscle spasms and pain radiating through her hips and legs. Claimant's amyloidosis and neuropathy have interfered with his treatment for her ankle and back injuries. Because she now moves only with a wheelchair or walker, physical therapy may not be used to treat her back.

The preexisting conditions are preventing recovery from her work injuries. Bristol testified that the back and

---

[3] In *Aquillon v. CNA Insurance,* 60 Or app 231, 653 P2d 264 (1982), *rev den* 294 Or 460 (1983), a physician treating the claimant for a work injury noted cloudy fluid in the claimant's knee joint. The fluid was the first clinical manifestation of what was later diagnosed as tuberculosis. The employer denied benefits for the work injury and for the tuberculosis, contending that the injury would have resolved itself *but for* the tuberculosis. On review, we held the denial improper:

"In this case claimant challenges what purports to be a partial denial of his claim insofar as it relates to the tuberculosis, viewed as a separate condition, as well as a denial of further responsibility for benefits as a result of the accepted industrial injury claim. In the abstract, that kind of denial might not be unreasonable where there is a noncompensable, separate condition and where the claimant has fully recovered from his compensable injury. Here, the preponderance of the medical evidence is that the tuberculosis itself was not worsened by the industrial injury and hence, is not itself compensable. The problem is that it is difficult, if not impossible, on this record to separate the effects of the tuberculosis from those of the traumatic injury.

"* * * * *

"There is, however, no medical evidence in the record supporting the position that all effects of the industrial injury had ceased. No doctor states the claimant's current condition stems solely from the tuberculosis. To the contrary, the undisputed medical evidence is that the two conditions are inextricably intertwined, in that the traumatic injury was superimposed on the tubercular infection, and the presence of the tubercular infection prolonged the effects of the traumatic injury to the synovium." 60 Or App at 235.

The same analysis applies here.

ankle injuries sustained by claimant at work are totally disabling because of the effect of the amyloidosis *on them, i.e.,* they will not heal, because of the amyloidosis. Although the preexisting conditions themselves are not compensable, their synergistic effect on her compensable injuries must be considered if she is permanently and totally disabled because of the injuries. *See Arndt v. Nation Appliance,* 74 Or App 20, 701 P2d 474 (1985); *see also Aquillon v. CNA Insurance, supra* n 3. Claimant is entitled to compensation for permanent and total disability. *See Taylor v. SAIF,* 75 Or App 583, 586, 706 P2d 1023 (1985).[4]

Affirmed.

---

[4] The oft-expressed maxim still applies: an employer takes the worker as it finds her. *Barrett v. D & H Drywall,* 300 Or 325, 328, 709 P2d 1083 (1985), *adhered to on reconsideration,* 300 Or 553, 715 P2d 90 (1986).