Argued and submitted October 11, 2002, reversed and remanded March 20, 2003

In the Matter of the Compensation of
Rudolfo I. Garcia, Claimant.

Rudolfo I. GARCIA,
*Petitioner,*

*v.*

SAIF CORPORATION
and Ed Frazier & Co.,
*Respondents.*

00-03878; A116561

66 P3d 522

Kevin Keaney argued the cause and filed the brief for petitioner.

David L. Runner argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

KISTLER, J.

Edmonds, P. J., dissenting.

## KISTLER, J.

The Workers' Compensation Board upheld SAIF's denial of claimant's request for compensation. On review, claimant argues that substantial evidence does not support a critical factual finding that the board made. We reverse and remand.

On February 21, 1999, claimant injured his lower back lifting a buffer machine. The next day, he sought treatment at a hospital emergency room. Claimant's injury was diagnosed as an L5-S1 disc herniation with possible herniation at the L4-5 level. SAIF accepted a claim for a disabling L5-S1 disc herniation, and a laminotomy and discectomy were performed on the L5-S1 disc.

After the surgery, claimant continued to experience substantial pain and underwent numerous tests to discover its cause. After several months of inconclusive testing, a myelogram followed by a CT scan on January 11, 2000, revealed a stenosis at L4-5. Dr. Michael Mason, a neurosurgeon, concluded that "there was a likelihood that claimant's back and leg symptoms were secondary to the stenosis." Claimant asked SAIF to accept the stenosis at L4-5 as a combined condition. SAIF denied that claim, and claimant requested a hearing. At the hearing, claimant relied primarily on Mason's deposition, in which Mason explained why he concluded that the stenosis at L4-5 combined with the work injury to cause claimant's symptoms. He also explained why, as between the stenosis and the work injury, the work injury was the major contributing cause of claimant's need for treatment.

Mason began his deposition by recounting claimant's history and his failure to improve after the surgery on L5-S1, which was followed by conservative treatment. Mason explained that, in addition to the history and the earlier studies, he had asked for a lumbar myelogram followed by a CT scan. The myelogram was interpreted "essentially as normal." The scan, however, revealed that claimant had a spinal stenosis, a narrowing of the spinal canal at L4-5.

Mason agreed that the stenosis preexisted the injury and occurred "over time with degenerative changes." The stenosis resulted from a "midline bulg[e]" in the disc that combined with "an extreme thickening of ligaments on the back side of the spinal sac[.]" As a result of the stenosis, claimant's spinal canal was "half its normal diameter." Mason explained that the stenosis alone was not symptomatic. Rather, it was not "until the nerve roots bec[a]me compressed that the patient bec[a]m[e] symptomatic." In his opinion, the trauma from the work injury combined with the stenosis to cause the nerve to become compressed and thus produced the need for surgery.

Counsel also asked Mason whether, as between the stenosis and the work injury, "the work accident is the more important or the major factor in producing his clinical picture at this point and the need for treatment given all that you know[.]" Mason answered:

"A. Yes. Again—because, again, he absolutely, certainly had narrowing of the canal before he was injured, and his symptoms started after his injury and basically have persisted until the present time. And it's the nerve injury and the nerve pain that all of the treatment is aimed at. It is not just necessarily aimed at the spinal stenosis. What we need to do is simply enlarge the canal so the nerves have room.

"Q. And * * * the work injury caused the damage to the nerve?[1]

"A. Yes.

"Q. Okay.

"A. Because he had the onset of symptoms after his injury."

Mason also explained why other potential preexisting causes were not, in his opinion, a significant factor in causing claimant's nerve compression.[2] For example, he explained that,

---

[1] This question and the answers that follow address whether the injury caused the nerve damage. They do not address the separate question whether the injury or the preexisting stenosis was the major contributing cause of the need for treatment.

[2] Mason ruled out claimant's earlier bout with polio as well as his diabetes as significant factors in causing his symptoms.

even though claimant's diabetes "made it easier for his nerve root to become hurt," it was still his opinion that the work injury was the major contributing cause of the need for treatment.

Finally, claimant's lawyer asked Mason about another doctor's opinion that the work injury had not produced any significant change at the L4-5 level. Mason responded:

"A. I would agree that [the work injury] probably didn't produce an anatomical change at the L4-5 level, but it certainly did produce the onset of nerve root symptoms at the L4-5 level, which is the factor which is responsible for his pain which needs to be treated.

"Q. Well, could we say that [the injury] produced an anatomical change as far as something changed within the nerve?

"A. Yes. The nerve compression, nerve swelling, nerve edema.

"Q. [The other doctor] seems to be focusing on whether [the work injury] made the disk bulging any more worse, the stenosis, or did anything like that.

"A. I doubt that a specific event would worsen the stenosis. The stenosis is a long-term, wear-and-tear issue. But if you have a sudden jerking movement, a sudden injury, the nerve root can become hurt, because there is a normal amount of nerve root space for it. And when the nerve becomes hurt, it develops nerve pain, and that's what brings the patient to the doctor, and that's what the surgery was done for.

"Q. And in weighing the factors, you feel that it was—

"A. Because it has produced the nerve root injury, nerve root pain, and this is what we're—this is what needs to be dealt with before this patient is going to be able to be free of symptoms as he can be."

After considering the evidence, the administrative law judge (ALJ) ruled that Mason's opinion was not "sufficient to establish compensability of the stenosis at L4-5 as a combined condition." The ALJ reasoned:

"Although Dr. Mason indicated that the injury was the major cause of the nerve injury, his opinion in this regard is based solely on the temporal relationship between the injury and the occurrence of symptoms. In this regard, Dr. Mason specifically based his belief that the work injury damaged the nerve solely on the fact that the onset of claimant's symptoms occurred after his injury. (Ex. 6[8A]-14, 15). Medical opinions based solely on a 'temporal relationship' between the claimant's work injury and the onset of disability and need for treatment generally do not satisfy the claimant's burden of proof. *Allie v. SAIF*, 79 Or App 284, 289[, 719 P2d 47] (1986)."

The ALJ upheld SAIF's denial, and the board adopted and affirmed the ALJ's order.

■ On review, claimant argues that the board erred in finding that Mason's medical opinion was based "solely" on the temporal relationship between claimant's work injury and his symptoms. Specifically, claimant argues that substantial evidence does not support that finding. SAIF responds that, when the board made the statements that claimant challenges, "it was not 'finding' as fact that Dr. Mason did not understand the nature of claimant's condition or the role the preexisting stenosis or other factors had played in the development of claimant's nerve pain." Rather, SAIF argues, the board was explaining why Mason's opinion failed to comply with the applicable legal standard. Alternatively, SAIF argues that "a reasonable person could find that Mason's opinion was based merely on the precipitation of symptoms and did not properly consider claimant's severe preexisting stenosis as a causal factor in his condition."

Regarding SAIF's first argument, we agree with claimant that the challenged statements are factual findings. The basis for Mason's opinion—*i.e.*, whether Mason based his opinion solely on the temporal relationship between claimant's injury and his symptoms or also considered other factors—presents a question of fact. To be sure, the statements that claimant challenges were included in a portion of the board's opinion entitled "Conclusions of Law and Opinion." But, as we recognized in *Gray v. Western Panel Mfg.*, 163 Or App 151, 155-56, 986 P2d 1249 (1999), the board may make factual findings in the course of explaining its legal analysis.

*Id.* (recognizing that the board had made factual findings in the portion of its opinion entitled "Conclusions of Law and Opinion").

■■ Regarding SAIF's second argument, we review the board's factual findings for substantial evidence. *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990). "[S]ubstantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make the finding." *Id.* In reviewing for substantial evidence, we do not "search 'the whole record' for evidence that, viewed in isolation, is 'substantial[.]' " *Younger v. City of Portland*, 305 Or 346, 356, 752 P2d 262 (1988). Rather, we "evaluate the substantiality of supporting evidence by considering *all* the evidence in the record." *Id.* (emphasis added). As the court explained in *Younger*,

> " 'Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting [an agency] decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitively precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. This is clearly the significance of the requirement * * * that courts consider the whole record.' "

305 Or at 354 (quoting *Universal Camera Corp. v. Labor Bd.*, 340 US 474, 487-88, 71 S Ct 456, 95 L Ed 456 (1951)) (ellipsis in *Younger*).

■ In this case, the board made two related but separate factual findings. The first finding addressed Mason's conclusion that the injury was one cause of claimant's symptoms; the board found that Mason "specifically based his belief that the work injury damaged the nerve solely on the fact that the onset of claimant's symptoms occurred after his injury." The second finding addressed Mason's conclusion that the injury was the major cause of the need for treatment; the board found that, "[a]lthough Dr. Mason indicated that the injury was the major cause of the nerve injury, his opinion in this regard is based solely on the temporal relationship between

the injury and the occurrence of symptoms." Explaining that opinions based solely on a temporal relationship do not satisfy a claimant's burden of proof, the board concluded that "Dr. Mason's opinion is not sufficient to establish compensability of the stenosis condition."

We begin with the board's first finding. Considering the whole record, we conclude that substantial evidence does not support that finding. In determining that the work injury was a cause of claimant's symptoms, Mason took a history from claimant, reviewed the other physicians' opinions and earlier tests, which were inconclusive, reviewed the myelogram and CT scan, and considered the disease process. Specifically, Mason explained the cause of the symptoms that claimant was experiencing. He explained that claimant's stenosis was not itself symptomatic, that a sudden injury or jerking movement could injure the nerve causing it to swell, and that the swollen nerve pushing against the narrowed spinal canal produced the pain that claimant was experiencing. Mason relied on the temporal correlation between the work injury and the onset of claimant's symptoms to determine that the injury claimant sustained at work was the act that caused claimant's nerve to swell and thus caused his symptoms. But his opinion does not rely "solely" on the proposition that, because claimant's symptoms occurred after the injury, the injury must have caused them.[3]

The same conclusion is true for the board's second finding. When asked whether, as between the preexisting stenosis and the work injury, the work injury was the major contributing cause of the need for treatment, Mason answered:

"A. Yes. [1] Again—because, again, he absolutely, certainly had narrowing of the canal before he was injured, and his symptoms started after his injury and basically

---

[3] We note that the question whether a work injury was a cause of a claimant's condition differs from the question whether it was the major contributing cause. The temporal sequence may be crucial in answering the first question but less significant in answering the second. *See Dietz v. Ramuda*, 130 Or App 397, 882 P2d 618 (1994), *rev dismissed*, 321 Or 416 (1995) (recognizing that the fact that a work injury precipitated a claimant's condition does not necessarily mean that it was the major contributing cause). Here, the board erroneously appeared to treat the two questions as if they were the same.

have persisted until the present time. [2] And it's the nerve injury and the nerve pain that all of the treatment is aimed at. It is not just necessarily aimed at the spinal stenosis. What we need to do is simply enlarge the canal so the nerves have room."

Mason's answer contains two explanations why he concluded that the injury was the major contributing cause of the need for treatment. First, he explained that the symptoms "started after [the] injury and basically have persisted until the present time." The board could find that the explanation set out in the first sentence is based solely on a temporal relationship, although it would not be required to do so.[4] The second explanation for Mason's conclusion begins with the word "and." Mason explained that treatment, *i.e.*, the surgery on claimant's spine, is "aimed at" "the nerve injury and the [resulting] nerve pain." He reasoned that, even though the treatment involves enlarging the spinal canal so that the canal will not constrict the swollen nerve, the treatment "is not just necessarily aimed at the spinal stenosis." Mason thus considered the reasons for performing the surgery to conclude that the work injury, which produced the injury to the nerves, rather than the stenosis, was the major contributing cause of claimant's need for treatment. The board may (or may not) find Mason's second explanation persuasive, but it cannot say that his second explanation as to why the injury was the major contributing cause of the need for treatment was based simply on the fact that claimant's symptoms followed the injury.

The record, viewed as a whole, reveals that Mason offered two explanations for his opinion that the workplace injury was the major contributing cause of claimant's need for treatment. The first may have been temporal. The second

---

[4] Reading the first sentence in the context of Mason's later explanation of the disease process, the board could (but is not required to) find that Mason based his opinion that the work injury was the major contributing cause of the need for treatment on the following reasoning: The sudden injury at work caused the nerve to swell and press up against the spinal canal, which produced the symptoms that have persisted since the injury. Because there would be no need for treatment in the absence of those symptoms, the work injury was the major contributing cause of surgery. That is the explanation that Mason suggests at the end of his testimony, which is quoted above. *See* 187 Or App at 55.

was not. On remand, the board might discount Mason's opinion because it found that he relied primarily on the first explanation or because his second, nontemporal explanation was not well reasoned. Or it might find that Mason's opinion, viewed in light of his explanation of the disease process and the lack of other explanations for claimant's continuing pain, was persuasive. However, what the board may not find on this record is that Mason's opinion on major contributing cause was based "solely on the temporal relationship between the injury and the occurrence of symptoms." Substantial evidence does not support that finding.

Reversed and remanded.

**EDMONDS, P. J.,** dissenting.

I disagree with the majority's conclusion that the administrative law judge's (ALJ) findings adopted by the board are not supported by substantial evidence. Consequently, I would affirm the board's decision.

In relevant part, the ALJ found:

> "After reviewing the medical evidence, I do not believe that Dr. Mason's opinion is sufficient to establish compensability of the stenosis at L4-5 as a combined condition. Although Dr. Mason indicated that the injury was the major cause of the nerve injury, his opinion in this regard is based solely on the temporal relationship between the injury and the occurrence of symptoms. In this regard, Dr. Mason specifically based his belief that the work injury damaged the nerve solely on the fact that the onset of claimant's symptoms occurred after his injury. (Ex. 6[8A]-14, 15). Medical opinions based solely on a 'temporal relationship' between the claimant's work injury and the onset of disability and need for treatment generally do not satisfy the claimant's burden of proof. Under such circumstances, I conclude that Dr. Mason's opinion is not sufficient to establish compensability of the stenosis condition."

(Citations omitted.)

ORS 183.482(8)(c) provides:

> "The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding

when the record viewed, as a whole, would permit a reasonable person to make that finding."

Could a reasonable person find on the evidentiary record before the board and the ALJ that Mason specifically based his belief that the work injury damaged the nerve solely on the fact that the onset of symptoms occurred after his injury? The ALJ made the above finding based on testimony of Mason in exhibit 68A, pages 14 and 15. Mason testified, in part, that claimant suffered from a stenosis (narrowing of the spinal canal) before the work injury occurred (exhibit 68A, page 9) and that trauma changed something in the canal to produce symptoms and the need for treatment. (exhibit 68A, page 10). Then, Mason gave the following answers at pages 13-15:

"Q.  And we know that he didn't have this sort of compression prior to the work accident because he would have had symptoms and the need for treatment, correct?

"A.  He was essentially symptom-free before.

"Q.  Right. So that's a big part of your analysis?

"A.  Yes. That's right. * * *

"* * * * *

"Q.  And workers—the work injury caused the damage to the nerve?

"A.  Yes.

"Q.  Okay.

"A.  Because he had the onset of symptoms after his injury."

I am aware of no cognizable legal impediment to a reasonable person inferring from the above testimony that Mason's opinion about causation was based solely on a temporal relationship between the injury and the symptoms. However, the majority concludes otherwise. First, it points out that Mason

"took a history from claimant, reviewed the other physicians' opinions and earlier tests, which were inconclusive, reviewed the myelogram and CT scan, and considered the disease process."

187 Or App at 58. Then it describes how Mason reasoned that the symptoms could have occurred as a result of a sudden injury or jerking movement to the stenosis. Based on those factors, the majority concludes that Mason's "opinion does not rely 'solely' on the proposition that, because claimant's symptoms occurred after the injury, the injury must have caused them." *Id.* (footnote omitted).

While the history, the tests, and the opinions of the other doctors all *could* have been a basis for an opinion regarding causation, Mason did not testify that those factors formed, in fact, the basis of his opinion. Rather, he said that he reached his opinion regarding causation "[b]ecause [claimant] had the onset of symptoms after his injury." It may be that Mason relied on the factors pointed to by the majority and that a reasonable person could have inferred from all of his testimony that he was relying on more than the temporal relationship between the symptoms and the injury, but the factfinders in this case, the ALJ and the board, were not required to draw that inference, contrary to the majority's holding.

Because the evidence entitled the ALJ and the board to draw the inference from the evidence that Mason's opinion was based solely on a temporal relationship, I perceive no proper basis on which to reverse the board,[1] and I therefore dissent.

---

[1] Claimant presents only one question on appeal: "Does substantial evidence support the Board's conclusion that Dr. Mason based his opinion supporting compensability 'solely on the temporal relationship between the injury and the occurrence of symptoms[?]' "