Argued and submitted March 4, affirmed September 2, 1998, petition for review
denied February 23, 1999 (328 Or 330)

In the Matter of the Compensation of
Boyd K. Belden, Claimant.

SAIF CORPORATION
and Danegon Plastics, Inc.,
*Petitioners,*

*v.*

Boyd K. BELDEN,
*Respondent.*

(Agency No. 95-08382; CA A96457)

964 P2d 300

David L. Runner argued the cause and filed the brief for petitioners.

Donald M. Hooton argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong,* Judges.

ARMSTRONG, J.

Warren, P. J., dissenting.

---

* Armstrong, J., *vice* Deits, C. J.

## ARMSTRONG, J.

SAIF seeks review of an order of the Workers' Compensation Board that held that ORS 656.262(7)(b), which was enacted in 1995, applied retroactively, thereby entitling claimant to seven percent permanent partial disability (PPD). We review for errors of law, ORS 183.462(8), and affirm.

We accept the facts as found by the Board. In 1986, claimant seriously fractured his left distal femur in an accident that was not related to work. In 1992, he twisted his left knee while walking at work. SAIF denied a claim for left knee strain on the ground that his noncompensable preexisting condition was the major cause of his current condition.

In 1993, an administrative law judge (ALJ) set aside SAIF's denial, finding that the 1992 work-related injury was the major contributing cause of claimant's combined condition. SAIF then accepted claimant's combined condition. Claimant's treating doctor declared claimant's knee condition medically stationary in September 1994. SAIF submitted the claim to the Department of Consumer and Business Services (DCBS) for closure, and the DCBS issued a determination order awarding claimant six percent PPD for his left knee. SAIF did not issue claimant a written denial before claim closure stating that his accepted injury was no longer the major cause of his combined condition.

Claimant sought reconsideration of the determination order by a medical arbiter. The medical arbiter found that claimant had limitations with respect to his knee's range of motion and repetitive use, which he attributed to claimant's preexisting left knee condition. Based on the medical arbiter's report, the DCBS reduced claimant's PPD award to zero on reconsideration.

Claimant requested a hearing at which he argued that the reduction of his PPD award could not be sustained under ORS 656.262(7)(b), which provides that, if an insurer intends to deny an accepted compensable condition, it must issue a written denial to the claimant before it acts to close the claim. Although the statute did not exist at the time of

claim closure in November 1994, claimant asserted that it applied retroactively to his claim. He argued that, under that statute, SAIF's failure to issue a written denial of claimant's current condition before his claim was closed rendered the closure premature, or, in the alternative, precluded SAIF from arguing that claimant's impairment was not related to the compensable injury.

The ALJ agreed that ORS 656.262(7)(b) applied retroactively and held that the statute required that the claim closure be set aside as premature. SAIF sought Board review and the Board concluded that, although the statute applied retroactively, it did not require that the closure be set aside. Instead, the Board held that, because SAIF had failed to issue claimant a current condition denial, all of claimant's impairment had to be attributed to the compensable injury. Accordingly, the Board awarded claimant seven percent scheduled PPD.[1]

■　　On review, SAIF argues that the Board erred when it applied ORS 656.262(7)(b) retroactively. We disagree. The legislature enacted ORS 656.262(7)(b) in 1995 as a part of Senate Bill 369, which substantially revised the Workers' Compensation Law. Or Laws 1995, ch 332. Section 66(1) of Senate Bill 369 provides, in part:

> "Notwithstanding any other provision of law, this Act applies to all claims or causes of action existing or arising on or after the effective date of this Act, regardless of the date of injury or the date a claim is presented, and *this Act is intended to be fully retroactive unless a specific exception is stated in this Act.*"

Or Laws 1995, ch 332, § 66(1) (emphasis added). We have interpreted that provision to mean that, unless an express exception exists, the revised law is to be applied to cases pending on review. *Volk v. America West Airlines*, 135 Or App 565, 569, 899 P2d 746 (1995).

---

[1] Although the initial determination order assessed claimant's PPD at six percent, the Board concluded that the medical arbiter's assessment of claimant's condition indicated that he should be awarded seven percent PPD. Neither party challenges that figure on review.

■ SAIF suggests that section 66(6) of the 1995 law could be understood to exclude ORS 656.262(7)(b) from the retroactivity provision. That section provides:

> "The amendments to statutes by this Act and new sections added to ORS chapter 656 by this Act *do not extend or shorten the procedural time limitations* with regard to any action on a claim taken prior to the effective date of this Act."

(Emphasis added.) Under that exception, provisions enacted as part of Senate Bill 369 that eliminate or alter statutory time limits do not apply retroactively. *Norstadt v. Murphy Plywood,* 148 Or App 484, 941 P2d 1030, *adhered to as modified* 150 Or App 245, 945 P2d 654 (1997). In other words, if, before the effective date of Senate Bill 369, a statute required a party to take action on a claim within a certain period of time, a provision enacted as a part of Senate Bill 369 that alters that period does not apply retroactively.

To determine whether ORS 656.262(7)(b) applies retroactively, then, we must determine whether its retroactive application would alter the period of time in which a party has to act. To do that, we must compare how the system operated before and after the legislature enacted that statute. If the amended statute does not alter any procedural time limitations, we must apply it retroactively.

In 1990, the legislature enacted ORS 656.005-(7)(a)(B), which, at the time of the closure of claimant's claim, provided:

> "If a compensable condition combines with a preexisting disease or condition to cause or prolong disability or a need for treatment, the resultant condition is compensable only to the extent the compensable injury is and remains the major contributing cause of the disability or need for treatment."[2]

ORS 656.005(7)(a)(B) governs the circumstances under which a claimant is substantively entitled to compensation for a combined condition. *United Airlines, Inc. v. Brown,* 127 Or App 253, 257, 873 P2d 326, *rev den* 319 Or 572 (1994).

---

[2] In 1995, ORS 656.005(7)(a)(B) was amended and the text modified. Those textual modifications do not effect the outcome of this case.

Once an insurer accepts a combined condition pursuant to ORS 656.005(7)(a)(B), it is obliged to treat that condition as compensable until it properly denies it.

Before 1995, there was no mechanism by which an insurer could deny an accepted combined condition. *Id.* (holding that ORS 656.005(7)(a)(B) did not provide a mechanism through which an insurer could deny an accepted combined condition). Thus, even if, under ORS 656.005(7)(a)(B), a claimant was no longer substantively entitled to compensation for a combined condition, the claimant was still entitled to compensation for the condition through claim closure. Moreover, under ORS 656.268, an insurer could close a claim only when the conditions accepted under it had become medically stationary or the claimant had enrolled and become "actively engaged in training." ORS 656.268(1) (amended Or Laws 1995, ch 2, § 3). That time did not necessarily have to coincide with the time at which a claimant's compensable injury had ceased to be the major contributing cause of the combined condition. In short, under the system as it existed before 1995, once an insurer had accepted a combined condition, it could not avoid paying compensation for that condition, even if it were no longer compensable.

In 1995, the legislature enacted ORS 656.262(6)(c) and ORS 656.262(7)(b) and amended ORS 656.268 to change the way in which combined conditions are treated. In order to determine the meaning of those statutes, we examine the text of them in context, turning to legislative history only if we cannot discern the meaning of the statutes from that review. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

Under ORS 656.262(6)(c), an insurer may now deny an accepted combined condition *at any point* if the "compensable injury ceases to be the major contributing cause of the combined * * * condition."[3] Under ORS 656.268,[4] an insurer

---

[3] ORS 656.262(6)(c) provides:

"An insurer's or self-insured employer's acceptance of a combined or consequential condition under ORS 656.005(7), whether voluntary or as a result of a judgment or order, shall not preclude the insurer or self-insured employer from later denying the combined or consequential condition if the otherwise compensable injury ceases to be the major contributing cause of the combined or consequential condition."

[4] ORS 656.268 provides, in part:

still must promptly close a claim when the claimant's condition becomes medically stationary, but now it may also move to close a claim when the compensable injury is no longer the major contributing cause of the combined condition. As a substantive matter, those statutes effectively reverse the old system. Now, an insurer can accept a combined condition pursuant to ORS 656.005(7)(a)(B) without being concerned that it will be obliged to continue to pay compensation for that condition if it stops being compensable.

■     While those two statutes effectively protect an insurer from paying for noncompensable claims, they do not prescribe the procedure that the insurer must follow in order to take advantage of its ability to deny an accepted combined condition. For that, the legislature enacted ORS 656.262(7)(b), which provides:

> "Once a worker's claim has been accepted, the insurer or self-insured employer must issue a written denial to the worker when the accepted injury is no longer the major contributing cause of the worker's combined condition before the claim may be closed."

ORS 656.262(7)(b) is a notice statute.[5] Its purpose is to ensure that, if an insurer is going to take advantage of its newly acquired right to deny an accepted combined condition, it does so in a manner that provides the claimant with a reasonable opportunity to object to that denial. ORS

---

"(1)  One purpose of this chapter is to restore the injured worker as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied worker. Claims shall not be closed if the worker's condition has not become medically stationary unless:

"(a)  The accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions pursuant to ORS 656.005(7) and the worker is not enrolled and actively engaged in training. When the claim is closed because the accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions, the likely impairment and adaptability that would have been due to the current accepted condition shall be estimated."

[5] The other subsections of ORS 656.262(7) provide additional support for our conclusion that ORS 656.262(7)(b) was intended to be a notice statute, because each of the subsections identifies circumstances in which the insurer must give notice. ORS 656.262(7)(a) describes when, after claim acceptance, an insurer must give written notice of acceptance or denial of aggravation or new medical condition claims. ORS 656.262(7)(c), in turn, requires an insurer to give a claimant a written updated notice of acceptance at claim closure.

656.262(7)(b) achieves that purpose by providing that an insurer that takes the position that a claimant's accepted combined condition is no longer compensable must issue a written denial pursuant to ORS 656.262(6)(c) before it may close the claim pursuant to ORS 656.268.

If an insurer concludes that a claimant's combined condition is no longer compensable, it must issue a written denial regardless of the reason that it seeks to close the claim. That is, if a claimant's combined condition ceases to be compensable at the same time that the conditions accepted under the claim become medically stationary, the insurer must issue a written denial of the combined condition even if it seeks to close the claim on the ground that the conditions are medically stationary. However, if the insurer believes that the combined condition remains compensable at the time that the claimant's conditions become medically stationary, it may close the claim on the ground that the conditions are medically stationary without issuing a denial of the combined condition. If an insurer does that, the combined condition remains accepted and the insurer is precluded from arguing at claim closure that the condition is no longer compensable.

In summary, before 1995, once an insurer had accepted a claim for a combined condition, it could not deny the claim, in writing or otherwise, on the ground that the compensable injury had ceased to be the major contributing cause of the worker's condition. *United Airlines*, 127 Or App at 257. In 1995, the legislature changed that, and an insurer may now deny an accepted condition when it is no longer compensable. However, to be effective under ORS 656.262(7)(b), the denial must be issued to the claimant, in writing, before claim closure.

After comparing the system as it operated before 1995 with how it operates after 1995, we conclude that the new statutory provisions do not extend or shorten the time period within which a party must act to preserve its rights. ORS 656.262(6)(c) and ORS 656.268 simply authorize activities that had been prohibited in the past and ORS 656.262(7)(c) simply places a procedural constraint on an insurer's ability to take advantage of those new provisions.

Accordingly, section 66(6) does not preclude the retroactive application of those provisions. Because no other exception to retroactivity expressly applies, we conclude that the Board did not err when it applied ORS 656.262(7)(b) retroactively.[6]

■ Applying the statutes retroactively, we affirm the decision of the Board. The Board found that SAIF had accepted claimant's combined condition. That condition became medically stationary and SAIF sought to have the claim closed. It did not issue a written denial of the accepted combined condition. Therefore, when it closed the claim, it accepted that the condition remained compensable. The DCBS initially awarded claimant six percent PPD. On reconsideration, a medical arbiter reassessed claimant's impairment. Based on that assessment, the Board awarded claimant seven percent PPD.

SAIF does not dispute that, if the combined condition is compensable, claimant is entitled to seven percent PPD. Instead, it argues that because the medical arbiter found that the claimant's compensable injury was not the major contributing cause of his resulting impairment, it should not have to pay compensation for that impairment. Essentially, SAIF is attempting to deny, at claim closure, claimant's accepted combined condition on the basis that it is no longer compensable. As we have already explained, for such a denial to be effective under ORS 656.262(7)(b), it has to be issued in writing before claim closure. Because that was not done, claimant's combined condition remained accepted

---

[6] SAIF also argues that our decisions in *Amfac, Inc. v. Garcia-Maciel*, 98 Or App 88, 92, 778 P2d 967 (1989), and *Gooderham v. AFSD*, 64 Or App 104, 667 P2d 551 (1983), require us to conclude that the statute cannot be applied retroactively. In each of those cases, we concluded that it was unreasonable, under the circumstances, to apply a rule promulgated by an agency retroactively. Likewise, SAIF argues, in this case it is unreasonable to apply ORS 656.262(7)(b) retroactively because to do so would penalize SAIF for failing to issue a written denial before it moved to close claimant's claim, even though the law prohibited insurer from issuing such a denial at the time it closed claimant's claim. However well-reasoned SAIF's argument may be, its reliance on our decisions in *Amfac* and *Gooderham* is misplaced. In this case, we are not interpreting a rule promulgated by an agency but a statute enacted by the legislature. That statute, Oregon Laws 1995, chapter 332, section 66, expressly provides that certain other statutes are to be applied retroactively. ORS 656.262(7)(b) is one of those statutes. In light of that statutory mandate, our task is not to determine whether it is reasonable to apply ORS 656.262(7)(b) retroactively but, simply, to apply the statute retroactively.

through claim closure, and we affirm the Board's decision to award him seven percent PPD.

Affirmed.

**WARREN, P. J.,** dissenting.

Because the majority opinion holds that the insurer should have complied with a procedural requirement that did not exist at the time of closure and that was, in fact, inconsistent with the law as it then existed, I dissent.

As the majority notes, before the legislature's 1995 enactment of ORS 656.262(7)(b), an insurer was prohibited from issuing a current condition denial before closure of the claim. *United Airlines, Inc. v. Brown*, 127 Or App 253, 873 P2d 326, *rev den* 319 Or 572 (1994). Thus, in this case, had SAIF denied claimant's current condition and ceased paying benefits before it closed the claim, it would have been subject to a penalty for unreasonable claim denial and termination of benefits.

The 1995 enactment of ORS 656.262(7) changed the law to permit an insurer to deny the compensability of a combined condition before claim closure, at the same time requiring the issuance of a written denial when the insurer becomes aware that the accepted injury is no longer the major contributing cause of the combined condition. As the majority correctly points out, we have held that the 1995 legislation is generally to be applied retroactively to cases pending on appeal, unless an express statutory exception exists. *Volk v. America West Airlines*, 135 Or App 565, 899 P2d 746 (1995). There is no statutory exception that would excuse SAIF's compliance with the written denial requirement that did not exist at the time of closure.

Unlike the majority, I conclude that the analysis does not end there. The Supreme Court has held that courts will not apply a statutory provision if an application of the literal meaning would produce an unintended, absurd result or if the literal import of the words is so at variance with the apparent policy of the legislation as a whole as to bring about an unreasonable result. *Johnson v. Star Machinery Co.*, 270 Or 694, 704, 530 P2d 53 (1974). We have held, further, that where retroactive application of an administrative rule is

"unreasonable in its prejudice," the rule should not be applied retroactively. *Amfac, Inc. v. Garcia-Maciel*, 98 Or App 88, 778 P2d 967 (1989).

In several of its decisions since the enactment of the 1995 legislation, the Workers' Compensation Board has held that where retroactive application of the new law will defeat the general legislative intent by producing an absurd or unjust result that is clearly inconsistent with the purposes and policies of the workers' compensation law, the statute will not be applied retroactively. *See, e.g., Rick A. Webb*, 47 Van Natta 1550 (1995); *Ida M. Walker*, 43 Van Natta 1402 (1991). The Board has recognized the unfairness of retroactively altering the rights and obligations of parties who have acted properly in reliance on the law in effect at the time of their actions, *Webb,* 47 Van Natta at 1551, and has held that substantial justice would not be served by requiring retroactive compliance with procedural requirements of the statute. *Id.*

In my view, the same rule applies in the context of ORS 656.262(7)(b). Retroactive application of the written denial requirement to SAIF in this case means imposition of an obligation that not only was not required but that was prohibited at the time of closure. I would hold that the legislature manifestly could not have intended that absurd and unjust result. Accordingly, I would reverse the Board's decision and remand the case for reconsideration.

I dissent.