Argued and submitted June 14, 2016, resubmitted en banc February 8, affirmed June 28, 2017

In the Matter of the Compensation of
Maurice McDermott, Claimant.

Maurice McDERMOTT,
*Petitioner,*

*v.*

SAIF CORPORATION
and Industrial Diesel Power,
*Respondents.*

Workers' Compensation Board
1403683; A160016

398 P3d 964

Joe Di Bartolomeo argued the cause for petitioner. With him on the briefs was Di Bartolomeo Law Office, P.C.

David L. Runner argued the cause and filed the brief for respondents.

Before Hadlock, Chief Judge, and Armstrong, Ortega, Sercombe, Duncan, Egan, DeVore, Lagesen, Tookey, Garrett, DeHoog, and Shorr, Judges, and Flynn, Judge pro tempore.

## SERCOMBE, J.

Claimant seeks review of an order of the Workers' Compensation Board upholding an award of permanent partial disability benefits by employer's insurer, SAIF Corporation, for claimant's right knee injury claim. The award apportioned claimant's benefits under OAR 436-035-0013 (2013)[1] so as to exclude compensation for his preexisting arthritic condition. In claimant's view, under ORS 656.268(1), as interpreted by the Supreme Court in *Schleiss v. SAIF*, 354 Or 637, 317 P3d 244 (2013), apportionment to exclude an award for impairment due to a preexisting condition is permitted only when the preexisting condition has been accepted as a part of a combined condition claim and then denied.[2] SAIF argues that the board correctly concluded that apportionment was appropriate under ORS 656.214 and the administrative rules for rating disability in OAR chapter 436, division 35. We review the board's order for legal error, ORS 656.298(7) (providing that review of board order shall be as provided in ORS 183.482); ORS 183.482(8)(a) (providing for review for legal error), conclude that the board did not err, and affirm.

Claimant suffered a compensable injury to his right knee that SAIF accepted as a strain and traumatic injury to the articular surface of the knee joint. During a surgical debridement, Dr. Hamilton observed preexisting arthritic changes. Hamilton opined that the work injury had combined with the preexisting arthritis to cause a combined condition. It is undisputed that claimant's arthritis is a

---

[1] Unless otherwise noted, throughout the opinion, references to the administrative rules are to the 2013 version.

[2] ORS 656.268(1) provides that an insurer or self-insured employer

"shall close the worker's claim * * * and determine the extent of the worker's permanent disability * * * when:

"(a) The worker has become medically stationary and there is sufficient information to determine permanent disability;

"(b) The accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions pursuant to ORS 656.005(7). When the claim is closed because the accepted injury is no longer the major contributing cause of the worker's combined condition or consequential condition or conditions, and there is sufficient information to determine permanent disability, the likely permanent disability that would have been due to the current accepted condition shall be estimated[.]"

preexisting condition as defined in ORS 656.005(24); claimant did not seek to have the arthritis accepted as a part of a combined condition, and SAIF did not accept a combined condition.

In the rating of claimant's disability, Hamilton attributed 40 percent of claimant's impairment to the accepted conditions and 60 percent to claimant's preexisting arthritic condition. SAIF closed the claim with an award of four percent "whole person impairment," apportioned as outlined by Hamilton. An administrative law judge and the board determined that apportionment was appropriate under OAR 436-035-0013 and upheld the award. Claimant seeks judicial review, contending that, under the pertinent statutes and the Supreme Court's opinion in *Schleiss*, the apportionment of impairment allowed by the rule was not permissible.

We begin our analysis with the text and context of the relevant statutes and rules. An injured worker who suffers permanent disability as a result of a compensable injury or occupational disease is entitled to benefits for impairment. ORS 656.214(2)(a) provides that, "[w]hen permanent partial disability results from a compensable injury or occupational disease, benefits shall be awarded [when the worker has been released to regular work] *** for impairment only." ORS 656.214(1)(c)(A) defines "permanent partial disability" to mean "[p]ermanent impairment resulting from the compensable industrial injury or occupational disease." ORS 656.214(1)(a) defines "impairment":

> "'Impairment' means the loss of use or function of a body part or system due to the compensable industrial injury or occupational disease determined in accordance with the standards provided in ORS 656.726, expressed as a percentage of the whole person."

Thus, ORS 656.214 authorizes permanent partial disability benefits only for impairment that "results from" or that is "due to the compensable industrial injury." "Compensable injury" is defined by ORS 656.005(7)(a)(B) to mean "an accidental injury *** arising out of and in the course of employment requiring medical services or resulting in disability or death *** subject to the following limitation[]":

"If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

The director of the Department of Consumer and Business Services has interpreted and applied ORS 656.214(1) through administrative rules that preclude an award of permanent partial disability for the portion of an impairment that is not due to or resulting from the compensable industrial injury but, instead, is due to or resulting from some other cause. Those rules were adopted by the director under his general authority in ORS 656.726(4)(a) to "[m]ake and declare all rules * * * which are reasonably required in the performance of the director's duties," and, specifically, to implement ORS 656.726(4)(f), which delegates to the director the authority to determine the meaning of "impairment * * * due to the compensable industrial injury." ORS 656.726(4)(f) delegates to the director the authority to

"[p]rovide standards for the evaluation of disabilities. The following provisions apply to the standards:

"(A)   The criterion for evaluation of a permanent impairment under ORS 656.214 is the loss of use or function of a body part or system due to the compensable industrial injury or occupational disease."

OAR chapter 436, division 35, sets out the director's standards for evaluation of a permanent impairment under ORS 656.214 "due to the compensable industrial injury." At the relevant time, OAR 436-035-0007 provided:

"(1)   Except for OAR 436-035-0014, a worker is entitled to a value under these rules only for those findings of impairment that are permanent and were caused by the accepted compensable condition and direct medical sequela. Unrelated or noncompensable impairment findings are excluded and are not valued under these rules. Permanent total disability is determined under OAR 436-030-0055.

"(2)   Permanent disability is rated on the permanent loss of use or function of a body part, area, or system due to a compensable, consequential, or combined condition and any direct medical sequela, and may be modified by the factors of age, education, and adaptability. Except for impairment determined under ORS 656.726(4)(f), the losses, as defined and used in these standards, are the sole criteria for the rating of permanent disability under these rules."

OAR 436-035-0013(2), in turn, required the physician to

"describe[] the current total findings of impairment, then describe[] those findings that are due to the compensable injury. In cases where a physician determines a specific finding *** is partially attributable to the accepted condition, only the portion of those findings that is due to the compensable condition receives a value. When apportioning impairment findings, the physician must identify any applicable superimposed or unrelated condition."

OAR 436-035-0014 provided, in part:

"(1)   Where a worker has a pre-existing condition, the following applies:

"(a)   For purposes of these rules only, a prior Oregon workers' compensation claim is not considered a pre-existing condition.

"(b)   Under ORS 656.225, disability caused solely by a worker's pre-existing condition is rated completely if work conditions or events were the major contributing cause of a pathological worsening of the pre-existing physical condition or an actual worsening of the pre-existing mental disorder. Disability is rated without apportioning.

"(c)   Where a worker's compensable condition combines with a pre-existing condition, under ORS 656.005(7), the current disability resulting from the total accepted combined condition is rated under these rules as long as the compensable condition remains the major contributing cause of the accepted combined condition (e.g., a major contributing cause denial has not been issued under ORS 656.262(7)(b)). Disability is rated without apportioning."

Claimant's conditions were rated consistently with OAR chapter 436, division 35, to include the disability loss "due to the compensable industrial injury" but to exclude the

loss caused by claimant's preexisting conditions that were not otherwise compensable as part of a combined condition. Claimant argues that the rules requiring that result exceed the director's authority, because they are inconsistent with ORS 656.268(1), regulating the closure of claims, ORS 656.266(2)(a), allocating the burden of proving that a work injury is no longer the major contributing cause of the disability of a combined condition, and ORS 656.268(7)(b), pertaining to denial of a combined condition.

As noted, ORS 656.268(1) describes the circumstances under which a claim involving disability may be closed. It provides, in part:

> "One purpose of this chapter is to restore the injured worker as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied worker. The insurer or self-insured employer shall close the worker's claim, as prescribed by the Director of the Department of Consumer and Business Services, and determine the extent of the worker's permanent disability, provided the worker is not enrolled and actively engaged in training according to rules adopted by the director pursuant to ORS 656.340 and 656.726, when:

> "(a)   The worker has become medically stationary and there is sufficient information to determine permanent disability;

> "(b)   The accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions pursuant to ORS 656.005(7). When the claim is closed because the accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions, and there is sufficient information to determine permanent disability, the likely permanent disability that would have been due to the current accepted condition shall be estimated[.]"

Thus, ORS 656.268(1)(b) explicitly provides for apportionment of the disability due to a combined condition under ORS 656.005(7)(a)(B) that has been accepted and then denied because the accepted injury is no longer the major contributing cause of that combined condition. That

apportionment, of course, is consistent with the director's rules that preclude apportionment for a preexisting condition "as long as the compensable condition remains the major contributing cause of the accepted combined condition." OAR 436-035-0014(1)(c).

Nonetheless, claimant argues that, in allowing apportionment between impairment caused by a preexisting condition and that caused by a work injury when the compensability of a combined condition has been denied under ORS 656.268(1)(b), the legislature intended to state the *only* occasion or process in which the disability due to a preexisting condition that has combined with a work injury can be excluded from the calculation of benefits. By negative inference, claimant reasons that, when the medical evidence at the time of closure shows the existence of a combined condition, and the combined condition has not been denied, the worker is entitled to a disability award for the entire combined condition—even when, as here, there has been no claim for a combined condition and when, as here, the medical evidence shows that the compensable injury is not the major contributing cause of the disability of the combined condition.

Importantly, claimant does not contend that the apportionment made by the board was inconsistent with the apportionment that would have been required by ORS 656.268(1)(b) had claimant filed a combined condition claim that was then denied. That is, claimant does not dispute the evidence that, at the time of the award, his compensable condition combined with a preexisting condition but that the compensable condition was not the major contributing cause of the disability.

Instead, claimant contends that because ORS 656.268(1) requires closure when the accepted injury is no longer the major contributing cause of the worker's combined condition, the claim closure process is the only occasion in which a combined condition can be established and denied and the disability can be apportioned to only the work injury. Thus, claimant asserts that the portions of OAR 436-035-0007, OAR 436-035-0013(2), and OAR 436-035-0014, which require compensation for the impairment that results from

a combined condition only when the compensable condition remains the major contributing cause of the combined condition, are inconsistent with the text and context of ORS 656.268.

In assessing whether those rules exceeded the statutory authority of the director, we assess whether the substance of the rule, "though within the scope of the agency's or official's general authority, departed from a legal standard expressed or implied in the particular law being administered, or contravened some other applicable statute." *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 565, 573, 687 P2d 785 (1984); *see also Garrison v. Dept. of Rev.*, 345 Or 544, 549, 200 P3d 126 (2008) ("[A] rule created within a statutory scheme cannot amend, alter, enlarge upon, or limit statutory wording so that it has the effect of undermining the legislative intent."); *Miller v. Employment Division*, 290 Or 285, 288, 620 P2d 1377 (1980) (framing the rule validity issue as whether the rule "conflicts with the clear, unambiguous words of [the statute]"). Thus, where the issue is whether "an otherwise valid rule * * * conflicts with clearly stated statutory policy," a court must "examine the applicable statutory wording in its context to determine the legislature's intent." *Managed Healthcare Northwest v. DCBS*, 338 Or 92, 95-96, 106 P3d 624 (2005).

We conclude that the rules are not inconsistent with ORS 656.268(1)(b) for a number of reasons. ORS 656.268(1) delineates policies for claim closure in a manner consistent with its stated intention "to restore the injured worker as soon as possible and as near as possible to a condition of self support and maintenance as an able-bodied worker." Accordingly, the statute sets out the circumstances under which an insurer "shall close the worker's claim" so as to restore the injured worker "as soon as possible." Those circumstances are when "there is sufficient information to determine permanent disability" and either the worker has become medically stationary or the accepted injury is no longer the major contributing cause of an accepted combined condition. On the face of it, ORS 656.268(1) provides for claim closure policies and does not provide directives on disability rating standards otherwise within the authority of the director to set.

Second, any inference that, in stating a particular rule of apportionment in ORS 656.268(1)(b) for the closure process, the legislature intended to preclude other apportionment rules applicable to the award of benefits is not apt. Claimant reasons that, in detailing the circumstances in which apportionment exists for a denied combined condition claim, the legislature intended to state in ORS 656.268(1)(b) the *only* circumstance in which a combined condition impairment can be apportioned. Claimant enlists the *expressio unius est exclusio alterius* maxim of statutory construction of statutory text ("the expression of one is the exclusion of others"). That rule is of limited value, at least when used as a rule of deduction and not mere inference. In *Colby v. Gunson*, 224 Or App 666, 671-72, 199 P3d 350 (2008), *rev'd on other grounds*, 349 Or 1, 238 P3d 374 (2010), we cautioned about reliance on the *expressio unius* maxim to determine legislative intent:

> "We qualified the value of that maxim in determining statutory intent in *State ex rel City of Powers v. Coos County Airport*, 201 Or App 222, 234, 119 P3d 225, *rev den*, 341 Or 197 (2005):
>
> > "'[B]oth we and the Supreme Court have repeatedly warned the bench and bar that *expressio unius* is not a rule of law but is instead a guide to understanding legislative intent. * * * The maxim "is to be applied with caution and merely as an auxiliary rule to determine the legislative intention." *Cabell et al. v. City of [Cottage] Grove et al.*, 170 Or 256, 281, 130 P2d 1013 (1942); *see also* Frank E. Horack Jr., 2 *Sutherland Statutory Construction* § 4917, 418 (3d ed 1943) (warning that the maxim "requires great caution in its application, and in all cases is applicable only under certain conditions").'
>
> "Thus, the *expressio unius* guide to legislative intent corroborates, rather than supplies, meaning to a statute. *See generally* Reed Dickerson, *The Interpretation and Application of Statutes*, 23 (1975) (citing *expressio unius* as an example of 'maxims [that] masquerade as rules of interpretation while doing nothing more than describing results reached by other means')."

(Brackets in *Colby*); *see also MEC Oregon Racing, Inc. v. Oregon Racing Comm.*, 233 Or App 9, 20, 225 P3d 61 (2009),

*rev den*, 348 Or 280 (2010) (a rule of permissible negative inference "gives way to other, more direct, and contrary evidence of legislative intent"); *State ex rel City of Powers*, 201 Or App at 234 (the maxim is to be applied with caution).

The context of ORS 656.268(1)(b) rebuts any inference that the statute states the only occasion where disability related to a preexisting condition can be apportioned when evaluating impairment. ORS 656.214(2) requires a determination of "impairment," *i.e.*, what loss of use is due to the compensable injury, and provides for an award of benefits for "permanent partial disability" "resulting from the compensable injury."[3] ORS 656.214 implicitly requires apportionment in the context of any claim when the impairment is not "due to" or the result of the compensable injury under the applicable standard of proof.

The preexisting regime of statutes and rules before the adoption of ORS 656.268(1)(b) provide context for its meaning that is consistent with our conclusion. *See, e.g.*, *State v. Ofodrinwa*, 353 Or 507, 512, 300 P3d 154 (2013) ("The context for interpreting a statute's text includes * * * the statutory framework within which the law was enacted."). That regime supports an interpretation of ORS 656.268(1)(b) as only a closure rule for accepted combined condition claims and not a rule that precludes apportionment in other contexts in which it is appropriate.

Before 1990, the equivalent subsection of ORS 656.214 limited a worker's recovery of benefits for unscheduled permanent disability to loss of earning capacity "due to the industrial injury." ORS 656.214(5) (1989). In *Barrett v. D & H Drywall*, 300 Or 553, 715 P2d 90 (1986), the Supreme Court interpreted that version of the statute to require apportionment of impairment not established to be due to the compensable injury. *See id.* at 555-56 (holding that an award of compensation is required when the compensable injury produces

---

[3] ORS 656.214(2)(a) further provides that "[i]mpairment shall be determined [in making an award] in accordance with the standards provided by the [director] pursuant to ORS 656.726(4)." ORS 656.726(4) authorizes the director to enforce ORS 656.214 and other statutes and to make rules that are reasonably required for the enforcement of that statute, and, specifically, to adopt rules to provide standards for the evaluation of a permanent impairment under ORS 656.214.

symptoms of the preexisting condition and those symptoms produce loss of earning capacity). Necessarily, the claimant would have the burden to prove, by the major contributing cause standard of proof now applicable, ORS 656.005(7)(a)(B), that the compensable injury produced symptoms of the preexisting condition. An apportionment of impairment for conditions that are not due to the compensable injury is a part of the workers' compensation scheme for the rating of disability that predates the enactment of the provisions relating to combined conditions.

The legislature made provision for the filing and acceptance of combined condition claims in 1990, Or Laws 1990, ch 2, § 3 (Spec Sess), enacting ORS 656.005(7)(a)(B):

> "If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

At that time, the legislature did not make separate provision for the processing or denial of combined condition claims that had been accepted. In *United Airlines, Inc. v. Brown*, 127 Or App 253, 257, 873 P2d 326, *rev den*, 319 Or 572 (1994), we held that a combined condition claim, once accepted, remained an accepted part of the claim to be processed through closure of the underlying compensable injury.

In 1995, the legislature enacted ORS 656.262(6)(c), Or Laws 1995, ch 332, § 28, to explicitly authorize the denial of a combined condition claim that had been previously accepted:

> "An insurer's or self-insured employer's acceptance of a combined or consequential condition under ORS 656.005(7), whether voluntary or as a result of a judgment or order, shall not preclude the insurer or self-insured employer from later denying the combined or consequential condition if the otherwise compensable injury ceases to be the major contributing cause of the combined or consequential condition."

The legislature enacted ORS 656.262(7)(b) at the same time. Or Laws 1995, ch 332, § 28. ORS 656.262(7)(b) provides:

"Once a worker's claim has been accepted, the insurer or self-insured employer must issue a written denial to the worker when the accepted injury is no longer the major contributing cause of the worker's combined condition before the claim may be closed."

We explained in *SAIF v. Belden,* 155 Or App 568, 575, 964 P2d 300 (1998), *rev den,* 328 Or 330 (1999), that ORS 656.262(7)(b) is a notice statute. It requires that an insurer that has taken advantage of the provision in ORS 656.262(6)(c) authorizing the denial of an accepted combined condition claim must issue a written notice of denial before it may close the claim pursuant to ORS 656.268. *Id.* In *Croman Corp. v. Serrano,* 163 Or App 136, 140, 986 P2d 1253 (1999), we held that the preclosure denial authorized by ORS 656.262(6)(c) and (7)(b) applies only to an *accepted* combined condition claim.

ORS 656.268(1)(b) was enacted in 1995 as a part of the same bill that included the amendments to ORS 656.262 relating to the processing of accepted combined condition claims.[4] Reading those provisions *in pari materia,* we conclude that the amendments to ORS 656.262 and ORS 656.268 that were adopted in 1995 and subsequently amended in 1999, pertain only to the processing of accepted combined condition claims and not to the processing and rating of combined conditions that have not been accepted—the construction of ORS 656.268(1)(b) advanced by claimant.

Claimant contends that our construction of ORS 656.268(1)(b) would improperly shift the burden to the *worker* to prove, at the time the disability is rated, that the accepted work injury is the major contributing cause of the combined condition in order to receive disability benefits for that condition. According to claimant, that construction contravenes the burden of proof assigned to an *employer* by ORS 656.266(2)(a) "to establish the otherwise compensable

---

[4] ORS 656.268(1)(b) was originally added to the statute as subsection (1)(a). *See* Or Laws 1995, ch 332, § 30. The subsection was amended to its current form in 1999. *See* Or Laws 1999, ch 313, § 1.

injury is not, or is no longer, the major contributing cause of the disability of the combined condition[.]"[5]

The two statutes, however, are not *in pari materia.* Neither provides relevant context to the meaning of the other. ORS 656.266 pertains to the burden of going forward to prove compensability during claim processing set out in ORS 656.262. It is the claimant's initial burden to prove the compensability of a claim. ORS 656.266(1). As we said in *Keystone RV Co.-Thor Industries, Inc. v. Erickson,* 277 Or App 631, 633-34, 373 P3d 1122 (2016), under ORS 656.005(7)(a)(B), the claimant bears the initial burden to establish that an "otherwise compensable condition" has combined with a pre-existing condition "to cause or prolong disability or a need for treatment." Once that combined condition is shown, ORS 656.266(2)(a) shifts the burden of going forward to the employer to establish that the combined condition is not compensable under ORS 656.005(7)(a)(B). ORS 656.268(1) sets out the policies concerning the timing of claim closure. The burden of proof during an earlier stage in the claims process has little relevance to the closure policies set out in that statute.

Moreover, ORS 656.266(2)(a) was adopted in 2001. Or Laws 2001, ch 865, § 2. It provides no window into the legislature's intention in the adoption of ORS 656.268(1)(b) two years earlier. *See, e.g., State v. Gaines,* 346 Or 160, 177 n 16, 206 P3d 1042 (2009) ("Ordinarily, only statutes enacted simultaneously with or before a statute at issue are pertinent context for interpreting that statute."); *Holcomb v. Sunderland,* 321 Or 99, 105, 894 P2d 457 (1995) ("The

---

[5] ORS 656.266 provides, in part:

"(1) The burden of proving that an injury or occupational disease is compensable and of proving the nature and extent of any disability resulting therefrom is upon the worker. The worker cannot carry the burden of proving that an injury or occupational disease is compensable merely by disproving other possible explanations of how the injury or disease occurred.

"(2) Notwithstanding subsection (1) of this section, for the purpose of combined condition injury claims under ORS 656.005(7)(a)(B) only:

"(a) Once the worker establishes an otherwise compensable injury, the employer shall bear the burden of proof to establish the otherwise compensable injury is not, or is no longer, the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

proper inquiry focuses on what the legislature intended at the time of enactment and discounts later events.").

Thus, consistent with its text and current and past statutory and regulatory contexts, we interpret ORS 656.268 (1)(b) to state a rule of closure for an accepted, and then denied, combined condition claim but not to preclude the apportionment of impairment due to the compensable industrial injury from the loss caused by a preexisting condition or other causes in the benefits award process.

Claimant contends that that construction of ORS 656.268(1)(b) is inconsistent with the Supreme Court's opinion in *Schleiss.* In *Schleiss,* the court held that OAR 436-035-0013 could not be applied to the extent that it required an apportionment of impairment due to noncognizable preexisting conditions in the award of permanent partial disability. The court held that that part of the rule conflicted with substantive policies on the apportionment of disability in ORS chapter 656. The court reserved and did not decide the issue presented in this case—whether apportionment applies only to accepted and then denied combined condition claims.

The claim in *Schleiss* did not involve a combined condition. The worker had suffered a compensable back strain. In awarding benefits for permanent partial disability, the board approved a rating of the claimant's impairment under OAR 436-035-0013 (2009)[6] that excluded values for impairment due to smoking-related premature aging and preexisting mild disc degeneration. The court considered whether that application of the administrative rule was consistent with ORS 656.214. The claimant contended that apportionment was limited to claims described in ORS 656.268(1)(b), involving previously accepted and then denied combined conditions, and, separately, that the apportionment was inconsistent with substantive standards in the workers' compensation law. *Schleiss,* 354 Or at 641.

The court eschewed a determination as to whether apportionment is limited to accepted and then denied combined

_____

[6] The 2009 version of OAR 436-035-0013 was not substantively different from the version applicable here in a way that alters the analysis.

condition claims and, instead, concluded that the challenged apportionment was erroneous because the preexisting condition was not substantively subject to apportionment.

> "We conclude that *it is unnecessary to resolve the parties' disagreement concerning the burdens of asserting and proving a combined condition claim,* because there is no evidence in the record that either of the contributing causes on which the medical arbiter and the board relied is a legally cognizable preexisting condition that would authorize the apportionment of claimant's impairment in a combined condition claim."

*Id.* at 651 (emphasis added).

The court then looked to the statutes relating to combined conditions in discerning the legislature's intentions with respect to apportionment of impairment under ORS 656.214. *Schleiss,* 354 Or at 648. The court observed that ORS 656.268(1)(b) implicitly provides for apportionment of causes contributing to a worker's impairment; when an accepted combined condition claim is denied, the impairment "due to" the compensable injury is limited to the percentage of the total impairment to which the injury contributed. *Id.* The court noted that, under ORS 656.268(1)(b), in the context of a "true" combined condition claim, contributing causes that are neither encompassed within the compensable injury nor *legally cognizable* as preexisting conditions (such as the aging effects of long-term smoking or a mild degenerative condition) may not be omitted from the rating of impairment. *Id.* at 653. The court reasoned that, if such conditions are not subject to apportionment in the rating of a "true" combined condition claim, then it would be anomalous to conclude that the legislature intended for them to be apportioned under ORS 656.214. Thus, the court explained, only preexisting conditions that would be "legally cognizable" in the context of a combined condition claim (because they fall within the definition of a "preexisting condition" in ORS 656.005(24)) may be excluded from the calculus of impairment under ORS 656.214. "It defies reason to believe," the court explained, that, "for purposes of apportionment of a worker's impairment, the legislature would afford such preferential treatment to a preexisting

contributing cause that would not be legally cognizable in a combined condition claim." *Id.* at 654. "To the contrary," the court said that,

> "if a preexisting contributing cause would not qualify to reduce the impairment that is 'due to' a compensable combined condition under ORS 656.268(1)(b), it makes no sense to conclude that such a cause would qualify to reduce the impairment that is 'due to' a claimant's compensable injury under ORS 656.214."

*Id.* The court said that there was no reason to conclude that the phrase "due to" in ORS 656.214 had a meaning different from its meaning in ORS 656.268, and concluded that, "to qualify for the apportionment of impairment, a cause must be legally cognizable." *Id.* at 655. Thus, the court concluded, apportionment upon the rating of impairment under ORS 656.214 is limited to "legally cognizable preexisting conditions," *i.e.*, preexisting conditions as defined in ORS 656.005(24). Impairment due to preexisting conditions that would not be legally cognizable in a combined condition claim may not be omitted from the rating. Because, in *Schleiss*, there were no legally cognizable contributing causes of impairment apart from the compensable injury, the court concluded that the claimant's impairment was not subject to apportionment. *Id.*

As we understand *Schleiss*, contrary to claimant's contention, the opinion does not limit apportionment to combined condition claims. In fact, that issue is expressly not decided. We necessarily reject claimant's contention that *Schleiss* requires the conclusion that ORS 656.268(1)(b) describes the only circumstance under which apportionment is permissible. It is undisputed that claimant's arthritis is a legally cognizable preexisting condition within the meaning of ORS 656.005(24). Thus, under the Supreme Court's opinion in *Schleiss*, it is subject to apportionment, unless it is part of an accepted combined condition claim that remains compensable at the time of closure under ORS 656.005(7)(a)(B). We therefore conclude that the board did not err in upholding the apportioned award of benefits.

Affirmed.

**FLYNN, J. pro tempore,** dissenting.

I write in dissent because I disagree with a fundamental proposition that the majority assumes to be true—that the director's rule for apportioning impairment is consistent with its statutory mandate to award compensation for permanent loss of use or function "due to the compensable industrial injury." 286 Or App at 411. As I understand both the Supreme Court's analysis in *Schleiss v. SAIF*, 354 Or 637, 317 P3d 244 (2013), and the Supreme Court's historical construction of loss "due to" the compensable injury, that phrase refers to the entire impairment if it is caused in material part by the compensable injury, not just to the percentage of impairment that was caused entirely by the compensable injury. I would hold that, except when the employer avails itself of the "combined condition" apportionment process that the legislature has created, compensation for permanent impairment continues to mean the entire impairment produced by symptoms that are caused in material part by the compensable injury. To the extent that OAR 436-035-0013 (2013) is to the contrary, I would hold the rule invalid.[1]

## I. LOSS "DUE TO" THE COMPENSABLE INJURY

### A. Schleiss *strongly suggests that the majority is wrong.*

I begin with *Schleiss*, because it has already addressed—and partially resolved—the question that I understand to be at the heart of this case. As the court framed the question in *Schleiss*:

> "Claimant asserts that, for purposes of an award under ORS 656.214, 'due to' means 'caused in material part by,' so that, if the compensable injury materially contributed to the total impairment, all the impairment is 'due to' the compensable injury. SAIF, on the other hand, asserts that the phrase refers to the percentage of the worker's total impairment that was caused by the compensable injury, so that the percentage of the total impairment 'due to' any other contributing cause must be excluded from an award."

---

[1] Unless otherwise noted, throughout this opinion referernces to the administrative rules are to the 2013 version.

354 Or at 643. The court in *Schleiss* observed that, "[o]n the surface of things, either of those proposed meanings is plausible" and, therefore, proceeded to "a detailed examination of the pertinent statutory framework" to determine the meaning of "due to." *Id.*

In examining "the pertinent statutory framework," the court in *Schleiss* gave particular consideration to the statutory changes that began in 1990, including the later adoption of what became ORS 656.268(1)(b), because—prior to the enactment of those provisions—"no statute addressed the role in [permanent partial disability] award determinations of impairment that is attributable to a preexisting condition that has combined with a compensable injury." *Id.* at 649. ORS 656.268 describes when an employer shall close a claim and specifies that, at closure, the insurer must issue a notice that specifies "[t]he amount of any further compensation, including permanent disability compensation to be awarded." *See also* ORS 656.268(1), (5)(c). Currently, ORS 656.268(1) specifies that the insurer shall close a claim when:

> "(a)   The worker has become medically stationary and there is sufficient information to determine permanent disability; [or]
>
> "(b)   The accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions pursuant to ORS 656.005(7)."

If the claim is closed under the circumstances of paragraph (b), that paragraph further provides that, if "there is sufficient information to determine permanent disability, the likely permanent disability that would have been due to the current accepted condition shall be estimated[.]" The provision for closure under the circumstances of paragraph (b) was added after the legislature modified the definition of "compensable injury" to exclude combined conditions caused in major part by the preexisting condition. Or Laws 1995, ch 332, § 30.

*Schleiss* describes the effect of those statutory changes in a way that should inform our analysis in the present case. As *Schleiss* concludes:

> "[T]he workers' compensation statutes now provide specific standards for determining how and when conditions that 'combine' workplace injuries with preexisting conditions are compensable and how and when impairment caused by such conditions can be apportioned."

354 Or at 649. Based on that context, the court concluded that, "if a preexisting contributing cause would not qualify to reduce the impairment that is 'due to' a compensable combined condition under ORS 656.268(1)(b), it makes no sense to conclude that such a cause would qualify to reduce the impairment that is 'due to' a claimant's compensable injury under ORS 656.214." *Id.* at 654 (footnote omitted).

That conclusion describes a proposition that is logically distinct from the proposition that the majority attributes to *Schleiss*. According to the majority, "under the Supreme Court's opinion in *Schleiss*," claimant's permanent disability award is subject to apportionment to eliminate the contribution from his "legally cognizable preexisting condition" of arthritis, "unless it is part of an accepted combined condition claim that remains compensable at the time of closure under ORS 656.005(7)(a)(B)." 286 Or App at 422. Phrased as a conditional proposition, the rule that the majority attributes to *Schleiss* for claims that are closed without the denial of a combined or consequential condition is:

> If a preexisting contributing cause would qualify as a "legally cognizable preexisting condition" (as defined in ORS 656.005(24)), then it qualifies to reduce the impairment that is "due to" a claimant's compensable injury— unless it remains part of an accepted combined condition.

However, the *Schleiss* court's actual conclusion, expressed as a conditional proposition, is the following:

> "[I]f a preexisting contributing cause would not qualify" as a "legally cognizable preexisting condition," then it does not "qualify to reduce the impairment that is 'due to' a claimant's compensable injury."

*Id.* at 654. In logic terminology, the proposition that represents *Schleiss*'s actual holding is the inverse of the proposition that the majority attributes to *Schleiss*, which means that the two propositions are not logically equivalent. (For

example, it may be true that, "if you see the sun, then it is day time." But it is not necessarily true that, "if you don't see the sun, then it is not day time.") The short answer is that the holding of *Schleiss* is not dispositive. It is, however, significant in two key ways that the majority fails to recognize.

First, *Schleiss* construes the rule of apportionment stated in ORS 656.268(1)(b) as implying a legislative intention to limit, at least somewhat, the director's ability to apportion impairment when the employer would be unable to obtain apportionment through closure under ORS 656.268(1)(b). *Id.* at 654. That holding is difficult to reconcile with the majority's conclusion that the legislature's authorization of apportionment under the circumstances described in ORS 656.268(1)(b) permits no inference that "the legislature intended to preclude other apportionment rules[.]" 286 Or App at 415 (asserting that "any" such inference "is not apt").

Second, *Schleiss* demonstrates that the Supreme Court understands "impairment" that is "due to" a claimant's compensable injury to include impairment that is partially attributable to an "unrelated condition." In *Schleiss*, the claimant had impairment of 13.8 percent due to "loss of range of range of motion" in his back that the medical arbiter rated as 67 percent "secondary to" the claimant's preexisting degenerative joint disease and history of smoking. 354 Or at 640. Relying on OAR 436-035-0013, the department awarded the claimant compensation for only the 33 percent of his impairment that it viewed as "due to" the compensable injury. *Id.* In holding "that all of [the] claimant's impairment is 'due to' the compensable injury for purposes of making a [permanent partial disability] award under ORS 656.214," the court necessarily rejected SAIF's argument—and the understanding of the department—that impairment "due to" the compensable injury means only "the percentage of the worker's total impairment that was caused by the compensable injury." *Id.* at 653, 655. Thus, *Schleiss* strongly suggests that whether permanent impairment is "due to" the compensable injury must be determined by considering the new impairment as a whole, unless the claim is closed under ORS 656.286(1)(b).

B. *ORS 656.268(1)(b) is a limited modification of the rule that impairment "due to" the compensable injury means the entire new impairment.*

Further, although I agree with the majority that "[t]he preexisting regime of statutes and rules before the adoption of ORS 656.268(1)(b) provide context for its meaning," 286 Or App at 416, I do not agree that the context supports the majority. Rather, I understand the prior "regime" to have provided no basis for apportioning permanent impairment that is caused when the work injury combines with a preexisting condition to produce new disability.

As the majority explains, the legislature created a special status for "combined conditions" in 1990 when it altered the definition of a "compensable injury." 286 Or App at 416-17 (citing Or Laws 1990, ch 2, § 3 (Spec Sess)); *see also Schleiss*, 354 Or at 644. Before that time, the administrative rules that specified the standards for disability rating of impairment simply used the "due to an injury" language of ORS 656.214 and contained no reference to apportioning impairment. *See* OAR chapter 436, division 35 (1988).

More significantly, case law prior to 1990 specified that, when the work injury combined with a preexisting condition to cause new disability, the disability due to that combining was calculated without discounting for the contribution that was attributable to the preexisting condition. *See Barrett v. D & H Drywall*, 300 Or 325, 709 P2d 1083 (1985) (*Barrett II*), *adh'd to on recons*, 300 Or 553, 715 P2d 90 (1986) (*Barrett III*). In *Barrett II*, "the worker fell off a ladder, landing on his feet and hitting his back on a brick wall." 300 Or at 330. Those "injuries were superimposed upon" the worker's underlying disease of osteoarthritis. *Id*. When the case was before us, we held that, in determining the worker's award for permanent partial disability, no consideration could be given to the preexisting condition, because

"[a]n award of permanent partial disability is to be rated on the basis of 'the permanent loss of earning capacity due to the compensable injury.' ORS 656.214(5). In determining loss of earning capacity attributable to an industrial injury, impairments not related to the injury are not considered."

*Barrett v. D & H Drywall*, 73 Or App 184, 186, 698 P2d 498 (*Barrett I*), rev'd, 300 Or 325, 709 P2d 1083 (1985), *adh'd to on recons*, 300 Or 553, 715 P2d 90 (1986) (footnote omitted).

The Supreme Court rejected that construction of impairment "due to the compensable injury." The court explained:

> "The oft-expressed maxim still applies: An employer takes the worker as he finds him. Whether the worker suffers greater permanent partial disability (measured by loss of earning capacity) because of a preexisting condition is irrelevant in deciding the amount of loss of earning capacity caused by a new injury superimposed on a preexisting condition."

*Barrett II*, 300 Or at 328 (footnote omitted). On reconsideration, the Supreme Court clarified that its decision "does not require any award of compensation for that disease or for any disability that may have existed by reason thereof before the present compensable injury." *Barrett III*, 300 Or at 555. Contrary to the majority's suggestion, the Supreme Court in *Barrett* did not hold that there could be any apportionment for disability related to new symptoms or that claimant would be required to prove disability according to a "major contributing cause" standard. 286 Or App at 416-17. Rather, the court's opinion on reconsideration refused to disavow its original decision and re-emphasized that any contribution from a preexisting condition to disability is irrelevant if the work accident caused a preexisting "disease to produce symptoms where none existed immediately prior to the accident." *Barrett III*, 300 Or at 555. If the symptoms were new, and if "those symptoms produced loss of earning capacity, then that loss of earning capacity is 'due to' the compensable injury, and the statute requires an award of compensation therefor." *Id.* at 555-56.

In *Nomeland v. City of Portland*, 106 Or App 77, 81, 806 P2d 175 (1991), we reiterated the distinction that *Barrett* drew, between cases in which the injury combined with a "previously asymptomatic condition" to cause disabling symptoms, and cases in which some of the worker's "disability or loss of use or function" existed before the employment. Because it was possible in *Nomeland* "to

segregate [the amount of the claimant's hearing impairment] that preexisted his employment from that caused by the employment," the employer was only responsible for the work-related portion of the disability. *Id.* at 81. However, we emphasized *Barrett II*'s "maxim that the employer takes the worker as it finds him" and explained that, when a work injury combines with a "predisposition" to suffer disability to cause "a loss of use or function, the loss of use or function is due to the injury and is compensable." *Id.* at 81.

Although the legislature subsequently modified that rule by creating a specific process for an employer to limit its responsibility when the employer believes that a preexisting condition has combined with the compensable injury, the legislature did not amended the language of ORS 656.214 to more broadly modify the rule described by the Supreme Court's decision in *Barrett*. Given that context, I see no basis for departing from the rule announced by the Supreme Court in *Barrett II* and reiterated by us in *Nomeland*, except in those cases in which the employer qualifies to reduce its liability under the "specific standards [that the legislature created] for determining how and when conditions that 'combine' workplace injuries with preexisting conditions are compensable and how and when impairment caused by such conditions can be apportioned." *See Schleiss*, 354 Or at 643, 649, 654. In all other cases, when an injury causes new symptoms of a preexisting condition, the entire permanent impairment is "due to" the compensable injury.

## II. THE PROCESS MATTERS

Finally, as the majority emphasizes, claimant does not specifically contend that his disability award would have been different if employer had followed the procedure to close the claim pursuant to ORS 656.268(1)(b). Although that might be a reason for declining to reach claimant's challenge, the majority has chosen to address the validity of the director's rules, which requires us to look beyond the circumstances of this particular case. In holding that the director's apportionment rule is valid, the majority's ruling reaches cases in which the rule will produce a result that is substantively different than what the legislature intended. In the wake of *Schleiss*, the board has construed OAR

436-035-0013 to avoid the result that *Schleiss* expressly prohibited: If the underlying condition, with which a claimant's compensable injury has combined, does not qualify as a "legally cognizable preexisting condition," then the employer remains responsible for the full impairment caused by the combined condition. 354 Or at 654. But identifying a "legally cognizable preexisting condition" is only the starting point under the "combined condition" process that the legislature created.

The legislature's process also requires the employer to issue a written denial that "the accepted injury is no longer the major contributing cause of the worker's combined condition." ORS 656.262(7)(b). The significance of that written denial is that the claimant has the opportunity to request a hearing, at which the employer will bear the burden of proving not only that the work injury has combined with a qualifying "preexisting condition" but also that the "otherwise compensable injury is not, or is no longer, the major contributing cause of the disability of the combined condition." ORS 656.266(2)(a). If the employer fails to meet that burden, the denial will not be upheld, and apportionment under ORS 656.268(1)(b) is unavailable. When an employer has not satisfied the prerequisites for closing a claim under ORS 656.268(1)(b), I would conclude that apportionment of any combined-cause disability is limited by the rule described by the Supreme Court in *Barrett*, at least until that court says otherwise.

In contrast to the legislatively approved apportionment process, OAR 436-035-0013 allows an employer to limit its responsibility for impairment resulting from a worker's combined condition without proving that a qualifying preexisting condition is the major cause of claimant's impairment. I would reverse the board's order and declare OAR 436-035-0013 invalid.

Ortega, Egan, Lagesen, Garrett, and Shorr, JJ., join in this dissent.