DEHOOG, P. J.
*551 Claimant petitions for review of an order of the Workers' Compensation Board. The board reduced claimant's permanent partial disability (PPD) award based on the finding that claimant's accepted occupational disease did not cause claimant's diminished range of motion in his fingers. Claimant does *766 not contest the board's factual finding regarding causation but argues that he is nonetheless entitled to PPD benefits for the diminished range of motion. We conclude that this case is controlled by our prior decisions in McDermott v. SAIF , 286 Or. App. 406, 398 P.3d 964 (2017), and Magana-Marquez v. SAIF , 276 Or. App. 32, 366 P.3d 764 (2016), and affirm.
Claimant filed a workers' compensation claim for carpal tunnel syndrome, which employer accepted as an occupational disease. At claim closure, employer's insurer awarded claimant 34 percent PPD based on lost range of motion in both wrists, lost range of motion in multiple fingers, and decreased sensation in the right middle finger. Employer requested reconsideration of those impairment findings by the Appellate Review Unit (ARU) of the Workers' Compensation Division. A medical arbiter panel examined claimant and found that, although the range of motion measurements for claimant's fingers were "below the standard 'norms' outlined in the Oregon Disability Rating Standards[,] *** none of the loss could be attributed to the accepted condition." According to the arbiter panel, claimant's reduced range of motion is "normal for [claimant], and is due to body habitus rather than to the accepted condition and subsequent surgery." As a result, the ARU awarded no impairment value for the lost range of motion in claimant's fingers and reduced his overall PPD award to four percent. Claimant requested a hearing before an administrative law judge (ALJ), then appealed the ALJ's decision to the board; both upheld the ARU's decision.
On judicial review, claimant's argument that the board erred in affirming the reduction to his PPD award raises two distinct issues. First, claimant argues that the board may apportion impairment only when a claim for a combined or consequential condition is closed under *552 ORS 656.268(1)(b), and not when, as here, a claim is closed under ORS 656.268(1)(a).[1] Second, he argues that impairment determinations must be based on the Oregon Disability Rating Standards, which are uniform standards that the Director of the Department of Consumer and Business Services has adopted under ORS 656.726(4)(f), rather than a claimant's actual physical abilities prior to the onset of the accepted condition. According to claimant, it was therefore error for the ARU to reduce his award based on "body habitus," i.e. , claimant's natural range of motion in his fingers. Those arguments raise only questions of law, and we review the board's order for legal error. ORS 656.298(7) (review of board orders shall be as provided in ORS 183.482 ); ORS 183.482(8)(a) (providing for review for legal error).
Our decision in McDermott forecloses claimant's first argument. In McDermott , we concluded that the board's authority to apportion impairment is not limited to closures under ORS 656.268(1)(b). 286 Or. App. at 420, 398 P.3d 964. We reasoned that, in all circumstances, there must be a causal link between the compensable injury or disease and the PPD award. Id. at 416, 398 P.3d 964. We cited ORS 656.214(1), which defines "impairment" as "the loss of use or function of a body part or system due to the compensable industrial injury or occupational disease," and defines "permanent partial disability" as "[p]ermanent impairment resulting from the compensable industrial injury or occupational disease." (Emphases added.) Further, ORS 656.214(2) provides that benefits shall be awarded "[w]hen permanent partial disability *553 results from a compensable injury or occupational disease[.]" (Emphasis added.) As a result, ORS 656.214"implicitly requires apportionment in the context of any *767 claim when the impairment is not 'due to' or the result of the compensable injury under the applicable standard of proof." McDermott , 286 Or. App. at 416, 398 P.3d 964. The board therefore did not err when it reduced the claimant's PPD benefits based on the percentage of his impairment that the board concluded was attributable to a preexisting arthritic condition, even though the claimant had never sought to have the arthritis accepted as part of a combined condition. Id. at 408-09, 398 P.3d 964.
This case differs from McDermott and our cases following McDermott only in that the accepted condition here is an occupational disease rather than an injury. That distinction does not affect our analysis. As quoted above, ORS 656.214 defines both impairment and PPD in reference to "the compensable industrial injury or occupational disease." Also, under the relevant administrative rule, the procedures for determining impairment are substantially identical, whether for an injury claim or an occupational disease claim. See OAR 436-035-0013(2)(a), (d) (requiring identification of "each body part or system in which use or function is permanently lost as a result of" the accepted injury or occupational disease, followed by determination of "the portion of the loss caused by" the accepted injury, occupational disease, or other causes). Apportionment of impairment for claims closed under ORS 656.268(1)(a) is therefore appropriate whether for an injury claim, as in McDermott , or an occupational disease claim, as in this case.[2]
Claimant's second argument similarly turns on whether there is a causal link between claimant's accepted carpal tunnel condition and the diminished range of motion in his fingers. Claimant argues that the board improperly failed to determine impairment according to the applicable uniform disability rating standards, located in OAR 436-035-0060. See ORS 656.214(1)(a) (impairment is loss of use or function of a body part or system "determined in accordance *554 with the standards provided under ORS 656.726"); ORS 656.726(4)(f) (authorizing the Director of the Department of Consumer and Business Services to "[p]rovide standards for the evaluation of disabilities"). Claimant contends that, because the ARU found that the range-of-motion measurements in his fingers were "below the standard 'norms' outlined in the Oregon Disability Rating Standards," he was entitled to the full impairment rating under OAR 436-035-0060 for his specific range of motion.
Contrary to claimant's contention, the board and ARU did not fail to determine claimant's impairment "in accordance with the standards provided under ORS 656.726," as required by ORS 656.214(1)(a). As explained above, claimant is entitled to benefits only for impairment "due to" or "resulting from" his accepted condition. Here, the ARU recognized that claimant's reduced range of motion was below the "norms" set forth in the disability rating standards; it found, however, based on the medical evidence, that claimant's accepted condition had not caused those abnormal measurements. Given that finding, nothing more was required for the ARU's determination to be "in accordance with the standards provided under ORS 656.726." ORS 656.214(1)(a).
Our decision in Magana-Marquez supports that conclusion. There, the insurer accepted an injury claim for a lumbar strain, which it later closed as medically stationary. 276 Or. App. at 33-34, 366 P.3d 764. Although the claimant's treating physician and an arbiter panel found that the claimant suffered from sensory loss and a reduced range of motion in her lumbar spine, they also found that the claimant's workplace lumbar strain had not caused those problems. Id. at 34, 366 P.3d 764. Instead, the arbiter panel "found that claimant's restrictions in range of motion were caused by her body habitus and spondylosis, and that her sensory loss likely was caused by her diabetes or thyroid disorder," none of which had been claimed as compensable preexisting conditions. Id. at 35, 366 P.3d 764. The claimant did not challenge those causation findings, and we affirmed.
*768 "Absent any causal relationship between claimant's compensable injury and her claimed disabilities, ORS 656.214 does not authorize an award of permanent disability." Id. at 36, 366 P.3d 764.
*555 Like the claimant in Magana-Marquez , claimant in this case does not challenge the board's factual finding that there was no causal relationship between claimant's carpal tunnel syndrome and his lost range of motion; as a result, the latter condition is not "due to" claimant's accepted condition, and he therefore is not entitled to PPD benefits for that claimed disability.
Affirmed.

ORS 656.268(1) provides, in relevant part:
"The insurer or self-insured employer shall close the worker's claim *** and determine the extent of the worker's permanent disability *** when:
"(a) The worker has become medically stationary and there is sufficient information to determine permanent disability; [or]
"(b) The accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions pursuant to ORS 656.005(7). When the claim is closed because the accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions, and there is sufficient information to determine permanent disability, the likely permanent disability that would have been due to the current accepted condition shall be estimated[.]"
Because claimant was medically stationary, his claim was closed under ORS 656.268(1)(a).

In light of our conclusion that it was not improper for the board to apportion impairment for a claim closed under ORS 656.268(1)(a), it is not necessary to further consider respondent's argument that the board did not apportion impairment at all, much less in a manner that claimant contends was unlawful.